SBC INTERACTIVE, INC., Plaintiff
Below, Appellant,

v.

CORPORATE MEDIA PARTNERS, Amer-
itech Media Ventures, Inc., Bellsouth
Interactive Media Ventures, Inc., GTE
Media Ventures Incorporated, Disney
Media Ventures Inc., and SNET Person-
al Vision, Inc., Defendants Below, Ap-
pellees.

No. 43, 1998.

Supreme Court of Delaware.

Submitted: June 23, 1998.
Decided: Aug. 10, 1998.

Michael D. Goldman (argued), Stephen C. Norman, and Kevin R. Shannon, Potter, Anderson & Corroon, Wilmington, for Appellant.

A. Gilchrist Sparks, III and Jon E. Abramczyk, Morris, Nichols, Arsht & Tunnell, Wilmington; James V. Kearney (argued), Latham & Watkins, New York City, of counsel, for Appellees Corporate Media Partners, Ameritech Media Ventures, Inc., Bell-South Interactive Media Services, Inc., and Disney Media Ventures, Inc.

Lawrence C. Ashby, Ashby & Geddes, Wilmington, for Appellee GTE Media Ventures Incorporated.

Richard D. Kirk, Morris, James, Hitchens & Williams, Wilmington, for Appellee SNET Personal Vision, Inc.

Before WALSH, HOLLAND, and BERGER, JJ.

WALSH, Justice:

This is an appeal from the Court of Chancery's award of summary judgment, and the denial of injunctive relief, in favor of certain partners who sought to require arbitration of the right of a single partner to withdraw from the partnership. The Appellant argues that the Court of Chancery erred in holding that the scope of arbitration, as well as the question of its proper invocation, are themselves issues for arbitration. We conclude that, under the terms of the arbitration provision set forth in the Corporate Media Partners Second Amended and Restated Partnership Agreement (the "Agreement"), issues concerning the procedure for triggering arbitration, as well as the merits of the withdrawal claim, are matters for arbitration, not initial judicial determination. Accordingly, we affirm the decision of the Court of Chancery.

## I.

The partnership entitled Corporate Media Partners was formed in April 1995 for the purpose of disseminating video programming. Its general partners are Appellant/Plaintiff-below, SBC Interactive, Inc. ("SBC"), and Appellees/Defendants-below, Ameritech Media Ventures, Inc., Bellsouth Interactive Media Ventures, Inc., GTE Media Ventures Incorporated, Disney Media Ventures, Inc., and SNET Personal Vision, Inc. (collectively "the Defendants"). At the time the partnership was formed, the partners' mutual expectation was that no partner, without the consent of the remaining partners, would withdraw from the partnership or exercise its power to dissolve the partnership for the first five years. Agreement § 7.3(a).[1]

On May 28, 1997, SBC notified the Defendants and the management committee of the partnership of its withdrawal under § 7.3(d) of the Agreement on the ground that its parent had engaged in a transaction that represented a material change in the parent's strategic direction.[2] Such withdrawal would

---

1. Section 7.3(a) of the Agreement provides:

   *Covenant Not to Withdraw or Dissolve.* Notwithstanding any provision of the Act, each Partner hereby covenants and agrees that the Partners have entered into this Agreement based on their mutual expectation that all Partners will continue as Partners and carry out the duties and obligations undertaken by them hereunder and that, except as otherwise expressly required or permitted hereby, no Partner shall withdraw from the Partnership, be entitled to demand or receive a return of such Partner's contributions or profits (or a bond or other security for the return of such contribution or profits) or exercise any power under the Act to dissolve the Partnership without the unanimous consent of the Voting Partners.

2. § 7.3(d) provides:

   *Permitted Withdrawal at the Level 2 Redemption Price.* Any Partner shall be permitted to withdraw from the Partnership, and upon such withdrawal the Partnership shall redeem the Partner's entire interest for the Level 2 Redemption Price specified in Section 7.4(c) if such Partner's Parent engages in a transaction

become effective on July 28, 1997, sixty days following receipt of the notice of withdrawal, the "Withdrawal Date," as defined in § 7.3(c). In response, the Defendants took the position that SBC's withdrawal was in breach of § 7.3(a) of the Agreement because the parent had not engaged in a designated transaction.

Between June 5 and October 7, 1997, the parties exchanged correspondence and negotiated in an effort to resolve the dispute. In a June 5, 1997 letter to SBC's senior management, the Defendants, "[w]ithout waiving any of [their] rights (including, but not limited to, those under Article 9) and prior to invoking formal dispute resolution procedures under the Partnership Agreement," requested a meeting in an effort to resolve the matter amicably. In a July 25, 1997 letter, the Defendants reiterated their position that SBC had no right to withdraw and stated that, should SBC seek to effectuate a withdrawal, they would pursue all remedies available. On August 5, 1997, representatives of Disney Media Ventures, Inc. and SBC met but were unable to settle the dispute. On September 15, 1997, the Defendants requested negotiations pursuant to § 9.1 of the Agreement.

On October 7, 1997, the Defendants formally demanded, pursuant to Article 9 of the Agreement, arbitration of their claim that SBC's withdrawal constituted a breach of the Agreement.[3] On October 15, 1997, SBC filed an action in the Court of Chancery seeking a preliminary injunction barring arbitration and a declaration that it was not required to arbitrate. The Court of Chancery denied SBC's injunctive relief and

granted the Defendants' motion for summary judgment.[4] This appeal ensued.

## II.

This Court reviews *de novo* an award of summary judgment by the Court of Chancery. *Williams v. Geier,* Del.Supr., 671 A.2d 1368, 1375 (1996). We are thus free to make our own determination of whether, as a matter of law, SBC's claims were properly relegated to arbitration.

## A.

SBC contends that the Court of Chancery's ruling that an arbitration panel must determine whether its dispute with the Defendants is subject to arbitration is contrary to Delaware law. SBC asserts that the Court of Chancery placed sole reliance on § 7.3(a) of the Agreement and did not consider SBC's options under § 7.3(d) to leave the partnership upon proper notice if willing to sustain a financial penalty.

SBC further argues that the Court of Chancery erred by disregarding undisputed evidence, presented through an affidavit, that the parties did not intend to arbitrate a withdrawal. Finally, SBC argues that the Court of Chancery erred by holding that the issue of whether the Agreement permits arbitration of the validity of withdrawal goes to the merits of the dispute and must be addressed in arbitration.

The Defendants respond that the underlying claim, as expressed in their Notice of Arbitration, is whether SBC's withdrawal violated § 7.3(a), the Covenant Not to Withdraw, because they disagree that there was a

---

that represents a material change in such Partner's Parent's strategic direction. The Partner withdrawing shall give a Withdrawal Notice to the Management Committee and each other Partner ... within sixty days after consummating such a transaction or thereafter the right to withdraw for such event shall be waived irrevocably. The withdrawal shall be effective on the Withdrawal Date....

3. Article 9 of the Agreement provides that any dispute "with respect to any controversy, claim or dispute of whatever nature arising out of or relating to this Agreement, ... or the existence of a breach or the termination hereof" shall be resolved through final and binding arbitration if

a resolution is not achieved during a 15 day negotiation period.

4. On March 23, 1998, while this appeal was pending, the parties participated in an arbitration hearing. The arbitration panel made an award in favor of the Defendants on April 20, 1998. In addition, the arbitration panel denied SBC's motion to dismiss the arbitration for lack of jurisdiction. Although this appeal was argued after the arbitration panel had ruled on the merits of the dispute, we do not find it to be moot because SBC challenges the jurisdiction of the arbitration panel.

change in the strategic direction of SBC's parent, within the meaning of § 7.3(d). That issue, it is argued, goes to the merits of SBC's claim and is thus the subject of arbitration. The Defendants further respond that the Court of Chancery properly did not consider the additional evidence because it found the contract to be unambiguous and because the proffered evidence was extrinsic to the Agreement.

The Court of Chancery characterized the dispute as whether "SBC's withdrawal from the partnership constituted a breach of the covenant not to withdraw contained in § 7.3(a) of the Partnership Agreement." The court found the arbitration provision to be broad and all encompassing. Moreover, the partnership agreement contained neither an express provision excepting disputes concerning withdrawal from arbitration nor evidence of an intent to exclude such disputes from the scope of the arbitration provision. As to SBC's argument concerning additional evidence, the Court of Chancery found that "the arbitration provision can not [sic] be *reasonably* read to cover that dispute, but also that interpretation is the *only* one to which the operative contract language is reasonably susceptible" (original emphasis) and declined to consider such extrinsic evidence as the affidavit submitted by SBC.

■■■ We begin our analysis with the premise that the public policy of Delaware favors arbitration. *Graham v. State Farm Ins. Co.*, Del.Supr., 565 A.2d 908, 911 (1989). In a proceeding to stay or to compel arbitration, the question of whether the parties agreed to arbitrate, commonly referred to as "substantive arbitrability," is generally one for the courts and not for the arbitrators. *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). *See also* Jay E. Grenig *Alternative Dispute Resolution with Forms* § 3.46 (2d ed.1997); 4 Am. Jur.2d *Alternative Dispute Resolution* §§ 4, 123 (1998). In determining arbitrability, the courts are confined to ascertaining whether the dispute is one that, on its face, falls within the arbitration clause of the contract. *AT & T*, 475 U.S. at 649, 106 S.Ct. 1415; *United Eng'rs & Constrs., Inc. v. Imo In-*

*dus., Inc.*, Del.Ch., C.A. No. 12611, Hartnett, V.C., 1993 WL 43016 (Feb. 16, 1993), Mem. Op. at 14; 10 *Del. C.* § 5701. Courts may not consider any aspect of the merits of the claim sought to be arbitrated, no matter how frivolous they appear. *AT & T*, 475 U.S. at 649–50, 106 S.Ct. 1415; Grenig, *supra*, § 3.46. Any doubt as to arbitrability is to be resolved in favor of arbitration. *Pettinaro Constr. Co., Inc. v. Harry C. Partridge, Jr. & Sons, Inc.*, Del.Ch., 408 A.2d 957, 962–63 (1979). A court will not compel a party to arbitrate, however, absent a clear expression of such an intent. 6 C.J.S. *Arbitration* § 25 (1998).

■■ SBC's argument that the Court of Chancery considered the wrong dispute is merely an exercise in semantics. The real issue here is whether SBC's parent engaged in a transaction that represented a material change in its strategic direction, thereby allowing a valid unilateral withdrawal under § 7.3(d). The absence of a § 7.3(d) basis for withdrawal would, of course, place SBC in breach of § 7.3(a) of the Agreement. Resolution of this issue obviously goes to the merits of the parties' dispute and, is thus outside of the limited scope of review permitted the Court of Chancery in this action. *United Eng'rs, supra*, at 14. We also agree with the Court of Chancery's ruling that the Agreement is unambiguous, and its refusal to consider evidence extrinsic to the partnership agreement is correct. *See Citadel Holding Corp. v. Roven*, Del.Supr., 603 A.2d 818, 822 (1992).

**B.**

■■ SBC next argues that, assuming the Defendants had a right to arbitrate, they lost that right because they failed to fulfill the condition precedent of seeking arbitration within 10 days after the conclusion of the Negotiation Period, as required by Sections 9.1 and 9.2 of the Agreement. The Defendants respond that SBC's condition precedent argument is essentially a waiver defense, which, itself, is subject to arbitration.

On this issue, the Court of Chancery ruled that, once arbitrability of the underlying dispute is determined, procedural defenses, in-

cluding timeliness, also fall within the scope of arbitration. The court viewed SBC's contention of untimeliness as constituting a waiver defense. In our view, the Court of Chancery correctly analyzed SBC's contention.

▮▮▮▮ Generally, resolution of procedural questions, including whether the invocation of arbitration was proper or timely, commonly referred to as "procedural arbitrability," is left to the arbitrator. *Action Drug Co. v. R. Baylin Co.*, Del.Ch., C.A. No. 9383, Berger, V.C., 1989 WL 69394 (June 19, 1989), Mem. Op. at 12. *Accord In re Compagnie Francaise des Petroles*, 279 A.D. 851, 110 N.Y.S.2d 1 (1952), aff'd, 305 N.Y. 588, 111 N.E.2d 645 (1953)(Mem.); *Mack Mfg. Corp. v. International Union, United Auto., Aircraft and Agric. Implement Workers Local 677*, 368 Pa. 37, 81 A.2d 562 (1951). *See also* Grenig, *supra*, § 3.36. SBC's argument ignores this general proposition, and the cases upon which it relies either do not concern arbitration or concern substantially different arbitration clauses. *See Acme Markets, Inc. v. Federal Armored Express, Inc.*, 437 Pa.Super. 41, 648 A.2d 1218 (1994); *Dickens v. Pennsylvania Turnpike Com'n*, 351 Pa. 252, 40 A.2d 421, 422 (1945).

In *Falcon Steel Co. v. Weber Eng'g Co.*, the Court of Chancery, considering a similar arbitration clause, applied the concept of procedural arbitrability in ruling that

> [t]o the extent that "waiver" is used in the sense of laches or estoppel, it operates to bar arbitration only where the arbitration remedy would be inequitable, such as where relevant evidence has been lost due to delay. Waiver in the "laches"' or "estoppel" sense is generally an issue for the arbitrator.

Del.Ch., 517 A.2d 281, 288 (1986). The court in *Falcon Steel* found that a contract requirement that a party give notice of claim within 5 days of the commencement of damages did not constitute a condition precedent to arbitrability but, instead, constituted a condition precedent to recovery. The court stated, "[f]or a party to be found to have waived its right to arbitrate, it must have actively participated in a lawsuit or taken other action inconsistent with the right to arbitration" and concluded that failure to give notice of claim within the required time period was not an action inconsistent with the right to arbitrate. *Id.*

It appears that SBC's "condition precedent" argument is really a "waiver in the sense of laches" argument and, thus, should be considered by the arbitrator. *See* Grenig, *supra*, § 3.38. Accordingly, we affirm the Court of Chancery in this respect.

## C.

▮▮▮▮ Finally, SBC makes several factual arguments concerning the invocation of arbitration. According to SBC, the Defendants may not arbitrate this dispute because: (i) the date for invoking arbitration had already passed when the Defendants attempted to do so [5]; and (ii) its withdrawal became final, binding and unchallengeable on the Withdrawal Date of July 28, 1997. The Court of Chancery considered these arguments and also found them to be defenses on the merits to arbitrable claims because they define SBC's rights and the Defendant's obligations under the Agreement.

▮▮▮▮ SBC's arguments are without merit for two reasons. First, it is clear that the arbitrator must decide whether the Defendants properly initiated arbitration. *See,* Part II.B., *supra.* Second, even accepting SBC's contention that a withdrawal becomes final, binding and unchallengeable on the Withdrawal Date,[6] its withdrawal is final, binding and unchallengeable only if the withdrawal was proper under § 7.3(d)—the very issue which must go before the arbitrator. In short, SBC's procedural defenses are cir-

---

5. SBC argues that either the June 5, 1997 letter or the July 27, 1997 letter, and not the September 15, 1997 letter, triggered the beginning of the § 9.1 Negotiation Period.

6. The Defendants argue that this interpretation of the effect of the Withdrawal Date is correct.

cular and ultimately become enmeshed in the merits of the arbitrable claims. *See United Eng'rs,* Mem. Op. at 16.

The judgment of the Court of Chancery is AFFIRMED.