## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MARY DOE (a fictitious name),

    Plaintiff,

v.

MASSAGE ENVY FRANCHISING, LLC

and

DDW ENTERPRISES, LLC

and

RED ENTERPRISES, INC. D/B/A MASSAGE ENVY – REHOBOTH BEACH AND D/B/A MASSAGE ENVY-LEWES

and

RICHARD DULEY,

    Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

C.A. No. S20C-05-005 RFS

## ORDER

Submitted: 12/10/2020
Decided: 12/21/2020

Philip T. Edwards, Esq., 1011 Centre Rd., Suite 210 Wilmington, DE 19805 and V. Paul Bucci, II, Esq. and M. Stewart Ryan, Esq., 1435 Walnut Street, Suite 700 Philadelphia, PA 19102, Attorneys for Plaintiff.

Brian Cunningham, Esq., 405 N. King Street, Suite 800 Wilmington, DE 19801, Attorney for Defendant, Massage Envy Franchising, LLC.

# I. INTRODUCTION

Before this Court is Massage Envy Franchising, LLC's ("MEF") Motion to Dismiss. For the reasons that follow, MEF's Motion to Dismiss is **GRANTED**.

# II. FACTUAL AND PROCEDURAL HISTORY

MEF is an Arizona-based franchisor of Massage Envy branded franchisees located throughout the United States. On October 16, 2017, Plaintiff checked into the Rehoboth Beach franchise (the "Franchise") for a massage. Upon arrival, the Franchise provided Plaintiff with an electronic tablet to complete a number of intake forms. Included within those forms, was the Terms of Use Agreement (the "Agreement"). To access the Agreement, Plaintiff was required to click on a hyperlink located next to a box with the sentence: "I agree and assent to the Terms of Use Agreement."[1] The words "Terms of Use Agreement" were underlined to reflect the hyperlink, which would take the client to a page displaying the entirety of the Agreement. In order to continue with the intake process, Plaintiff checked the box indicating she assented to the Agreement.

When the Agreement opened up, the below relevant text was located at the top of the page in bold and capitalized font:

> IMPORTANT NOTICE: THIS TERMS OF USE AGREEMENT ("AGREEMENT") CONTAINS A BINDING ARBITRATION PROVISION AND A CLASS ACTION WAIVER. PLEASE READ IT CAREFULLY BECAUSE IT AFFECTS YOUR LEGAL RIGHTS AS DETAILED IN THE BINDING INDIVIDUAL ARBITRATION SECTION BELOW.[2]

Further down the Agreement, there is a section titled "BINDING INDIVIDUAL ARBITRATION." Following the title, the below text is provided in bold, capitalized font:

---

[1] Def.'s Mot. Ex. A-1.
[2] *Id.* Ex. A-2.

PLEASE READ THIS SECTION CAREFULLY-IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT.[3]

The paragraphs following the above text provide that Plaintiff is agreeing to arbitrate disputes against MEF that arise out of or relate to services.[4] It further provides that "validity, enforceability, or scope" of the arbitration provision is to be decided by the arbitrator.[5]

Following completion of the intake process, Plaintiff went to receive a massage from a massage therapist at the Franchise. During the course of the massage, Plaintiff alleges she was sexually assaulted.

On May 6, 2020, Plaintiff filed her complaint in this Court seeking damages. Plaintiff puts forth multiple causes of actions against MEF: (1) Vicarious Liability; (2) Negligence; (3) Negligent Performance of Undertaking to Render Services; (4) Negligent Misrepresentation; (5) Civil Conspiracy; (6) Negligence Per Se; and (7) Negligent Infliction of Emotional Distress.

## III. DISCUSSION

Superior Court Civil Rule 12(b)(6) provides that a defendant may bring a motion to dismiss if the claimant fails to state a claim upon which relief can be granted.[6] "Delaware courts lack subject matter jurisdiction to resolve disputes that litigants have contractually agreed to

---

[3] *Id.*

[4] *Id.* The provision states:
> [A]ll Disputes between you and any ME Entity. The term "Disputes" is to be given the broadest possible meaning that will be enforced that means any dispute, claim, or controversy of any kind between you and any of the ME Entities that arise out of or in any way relate to . . . (4) any product or service provided by or purchased from an independently owned and operated Massage Envy® franchised location... (5) this Agreement, including the validity, enforceability or scope of this Binding Individual Arbitration Section..., whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory.

[5] *Id.* The Agreement further provided that Plaintiff had the ability to opt out of the arbitration provision within 30 days; however, neither Plaintiff nor MEF claim Plaintiff opted out.

[6] Super. Ct. Civ. R. 12.

arbitrate."[7] The Court may dismiss a complaint for lack of subject matter jurisdiction after determining (1) whether a valid and enforceable arbitration agreement exists and (2) whether the scope of that agreement covers the plaintiff's claims.[8]

The public policy of Delaware favors arbitration.[9] "Arbitration is the preferred mechanism for resolving disputes in this State and the court should 'ordinarily resolve any doubt as to arbitrability in favor of arbitration.'"[10] If Plaintiff agreed to arbitrate her claims, the Court must dismiss or stay the matter pending a decision by the arbitrator.

The Agreement expressly lays out that the agreement to arbitrate is governed by the Federal Arbitration Act ("FAA").[11] The two questions a court must assess when deciding to dismiss a complaint in favor of arbitration are: (1) whether a valid and enforceable arbitration agreement exists and (2) whether the scope of that agreement covers the plaintiff's claims.[12]

The Court begins its analysis by determining whether the Plaintiff was presented with a valid enforceable "clickwrap" agreement. MEF argues the Agreement was in the form of a valid "clickwrap" agreement. . "A clickwrap agreement is an online agreement that requires a 'webpage user [to] manifest assent to the terms of a contract by clicking an 'accept' button in order to proceed.'"[13] Clickwrap agreements are routinely recognized by courts and are enforceable under Delaware law.[14]

---

[7] *NAMA Holdings, LLC v. Related World Market Center, LLC*, 922 A.2d 417, 429 (Del. Ch. 2007) (citing *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 295 (Del.1999)).
[8] *Dewey v. Amazon.com, Inc.*, 2019 WL 3384769, at *3 (Del. Super. Ct. July 25, 2019).
[9] *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998).
[10] *Behm v. Am. Int'l Grp., Inc.*, 2013 WL 3981663, at *5 (Del. Super. Ct. July 30, 2013) (citing *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del.2002)).
[11] *Id.* Ex. A-2. (Delaware arbitration law mirrors federal law. *Behm v. Am. Int'l Grp., Inc.*, 2013 WL 3981663, at *6 (Del. Super. Ct. July 30, 2013).
[12] *Dewey v. Amazon.com, Inc.*, supra at *3.
[13] *Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, at *1 (Del. Ch. Mar. 27, 2014) (citing *Van Tassell v. United Mktg. Gp., LLC*, 795 F.Supp.2d 770, 790 (N.D.Ill.2011)).
[14] *Newell Rubbermaid*, 2014 WL 1266827, at *1.

4

Plaintiff argues she was not presented with a clickwrap agreement; rather, she was presented with an unenforceable "browsewrap" agreement. Plaintiff argues the agreement presented to her did not require the client to acknowledge the contents of the Agreement. Further, Plaintiff contends the Agreement does not put clients on notice of the contents actually located within the Agreement, which is located in a separate area of the website. A browsewrap agreement "involve[s] a situation where notice on a website conditions use of the site upon compliance with certain terms or conditions, which may be included on the same page as the notice or accessible via a hyperlink. Thus, a party gives ... assent simply by using the website."[15] Such agreements are generally unenforceable.

In *Newell Rubbermaid Inc., v. Storm*, the Chancery Court held that an agreement modifying an employee's post-employment rights was enforceable.[16] The court determined that the agreement was a valid clickwrap agreement that required the defendant to affirmatively click a box next to a conspicuous sentence agreeing to the terms.[17] The requirement to check the box signifies the user's assent. Here, Plaintiff manifested her assent by checking the box located next to the sentence "I agree and assent to the Terms of Use Agreement." The sentence is directly located next to the check box and includes a hyperlinked "Terms of Use Agreement." The hyperlink is signaled by underlined text that is in a different colored font.[18] Because Plaintiff was required to check a box to manifest her assent, similar to the agreement in *Newell Rubbermaid*, the Court concludes Plaintiff was presented with a clickwrap agreement.

---

[15] *Newell Rubbermaid*, 2014 WL 1266827, at *1 (citing *Van Tassell v. United Mktg. Gp., LLC*, 795 F.Supp.2d 770, 790 (N.D.Ill.2011)).
[16] *Newell Rubbermaid*, 2014 WL 1266827, at **6–7.
[17] *Id.*
[18] Def.'s Mot. Ex. A-1.

Here, the Court finds a valid and enforceable arbitration agreement exists. As soon as Plaintiff is presented with the Agreement, Plaintiff is put on notice that she would be altering her legal rights. The arbitration provision itself is conspicuous within the Agreement. It is in bold capitalized text, instructing Plaintiff to read the section carefully.[19]

Plaintiff does not recall reading the contents of the Agreement. MEF has provided a copy of the forms completed by Plaintiff in which Plaintiff checked the box.[20] Plaintiff argues she does not remember checking the box and she did not read or understand the terms in the Agreement; however, without checking the box, Plaintiff would not have been able to continue the intake process.[21] Therefore, Plaintiff manifested her assent to the terms. Plaintiff's failure to read or investigate the Agreement is of no consequence on whether the claims are subject to arbitration.

In *Newell Rubbermaid*, the court provided the defendant's failure to read did not mean she did not agree to the terms. The court stated:

> Storm is understandably unhappy that she did not read the 2013 Agreements; however, she was presented with a fair opportunity to do so, opened up the appropriate pop-up from which she could do so, and even indicated through the checkbox that she did so. She altered her post-employment rights in a manner she appears to regret now, but it was her choice to modify her rights without fully investigating the terms to which she agreed.[22]

Plaintiff may not remember checking the box or reading the terms; however, she could not finish the intake process without checking the box signifying her assent to the Agreement. By checking the box, Plaintiff assented and agreed to the arbitration clause. Even though Plaintiff

---

[19] *Id.*
[20] Def.'s Mot. Ex. A.
[21] *Id.*
[22] *Newell Rubbermaid*, supra, at *8.

may not have read the terms, as the court in *Newell Rubbermaid* stated, "it was her choice to modify her rights without investigating the terms."[23]

Failure to read or recall agreeing to the Agreement will not keep this case out of arbitration. As the court in *Newell Rubbermaid* provided, Plaintiff should have investigated the terms to which she was agreeing.

Next, the Court must determine whether the scope of the Agreement covers Plaintiff's claims. Here, the arbitrator must decide whether Plaintiff's claims fall under the Agreement. Because the Court concludes Plaintiff assented and agreed to the Agreement, Plaintiff assented to the arbitration clause, including having issues of arbitrability to be decided by the arbitrator.[24]

"[W]hen ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."[25] The Agreement expressly provides that issues of arbitrability would also be subject to the arbitrator, providing:

> [A]ll Disputes between you and any ME Entity. The term "Disputes" is to be given the broadest possible meaning that will be enforced that means any dispute, claim, or controversy of any kind between you and any of the ME Entities that arise out of or in any way relate to . . . (5)this Agreement, including the validity, enforceability or scope of this Binding Individual Arbitration Section..., whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory.[26]

Parties can agree to arbitrate questions of "arbitrability."[27] Again, this provision is conspicuous, putting Plaintiff on notice. Plaintiff assented to these terms by checking the box

---

[23] *Id.*

[24] The United States Supreme Court in *Henry Schein, Inc.* provided "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530, 202 L. Ed. 2d 480 (2019).

[25] *Behm v. Am. Int'l Grp., Inc.*, 2013 WL 3981663, at *6 (Del. Super. Ct. July 30, 2013) (citations omitted).

[26] Def.'s Mot. Ex. A-2.

[27] *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69, 130 S. Ct. 2772, 2777, 177 L. Ed. 2d 403 (2010).

assenting to the Agreement. Plaintiffs assent, along with the explicit terms of the Agreement, constitutes clear and unmistakable evidence of the parties' intent to delegate the issue of scope to the arbitrator.

Lastly, Plaintiff raises several arguments that there is no valid contract, such as unconscionability. "[C]hallenges to the validity of an entire contract which contains an arbitration clause are for the arbitrator to decide."[28] Therefore, concluding Plaintiff assented to arbitration, the Court will allow the arbitrator to address Plaintiffs arguments.

## V. CONCLUSION

Considering the foregoing, Defendant's Motion to Dismiss is granted without prejudice.

**IT IS SO ORDERED.**

Richard F. Stokes, Judge

cc: Prothonotary's Office
Counsel of Record

---

[28] *Gilmartin v. Whaley Royce, LLC*, 2017 WL 1162939, at *5 (Del. Ch. Mar. 28, 2017) (citing *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006); *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967)).

8