# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DIAMOND MATERIALS, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. N20C-05-162 MAA |
| | ) | |
| v. | ) | |
| | ) | |
| TUTOR PERINI CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: January 15, 2021
Decided: April 30, 2021

*Upon Defendant Tutor Perini Corporation's Motion to Dismiss
the Complaint or in the Alternative to Stay*
**GRANTED in part.**

## MEMORANDUM OPINION

Steven F. Mones, Esquire, of MINTZER SAROWITZ ZERIS LEDVA & MEYERS, LLP, Wilmington, Delaware, and Ross D. Ginsberg, Esquire (Argued), of WEINBERG WHEELER HUDGINS, GUNN & DIAL, LLC, Atlanta, GA, Attorneys for Plaintiff.

James S. Green, Jr., Esquire (Argued), of SEITZ, VAN OGTROP & GREEN, P.A., Wilmington, Delaware, Attorney for Defendant.

**Adams, J.**

This opinion resolves a dispute over whether Diamond Materials, LLC ("Diamond"), a full-service construction site contractor, must arbitrate certain claims in this action pursuant to two road construction subcontracts it entered into with Tutor Perini Corporation ("TPC"). Under the subcontracts, Diamond is the subcontractor and TPC is the contractor. Besides the scope of work, clarifications, and subcontract amounts, the language in the subcontracts is identical. The arbitration provision in the subcontracts states that a certain subset of disputes must be arbitrated, namely any of Diamond's claims that arise from the acts or omissions of the Delaware Department of Transportation ("DelDOT"). The provision also provides that TPC decides whether any of Diamond's claims falls into this subset of claims.

Here, Diamond seeks, among other things, money damages and attorneys' fees from TPC for bad faith breaches of the two subcontracts. TPC alleges that Diamond's claims arising out of the subcontracts must be arbitrated per the plain language of the arbitration provision. TPC has moved to dismiss this action in favor of arbitration or, in the alternative, for a stay pending arbitration.

Diamond's motion to dismiss is granted in part. The question of whether Diamond's claims are arbitrable must be answered by the Court. Unless a contract clearly and unmistakably provides otherwise, Delaware law mandates that questions of substantive arbitrability require judicial resolution. In this opinion, the Court

2

concludes that the subcontracts do not mandate that an arbitrator decide substantive arbitrability. Further, given the arbitration provision's plain language that TPC is to determine whether Diamond's claims fall within the group of claims that must be arbitrated, the Court concludes that Diamond has a contractual obligation to arbitrate its claims. As such, TPC's motion to dismiss Counts I, II, and IV in favor of arbitration is granted. Because arbitration of these claims may affect the remaining claim in the complaint, in the interest of judicial economy, this action will be stayed pending the results of the arbitration.

## I. Factual Background

The facts pertinent to the current dispute can be stated briefly and are drawn from Diamond's complaint or are otherwise undisputed in the parties' submissions.

Diamond is a full-service site contractor based in Newport, Delaware. TPC is a Massachusetts construction company authorized to do business in the State of Delaware. Between December 2015 and May 2016, Diamond and TPC entered in two subcontracts (the "308 Contract" and the "302 Contract," collectively "the Subcontracts") relating to the construction of road interchanges between US Route 301 and State Routes 896 and 1.[1]

---

[1] Complaint ("Compl."), at ¶¶ 9-10.

The terms of the Subcontracts are identical, with the exception of the scope of work, clarification, and subcontract amounts. Under the Subcontracts, TPC serves as the contractor, and Diamond as the subcontractor.[2] The Subcontracts incorporate and are governed by the prime roadwork contract (the "Prime Contract") between TPC and DelDOT, under which DelDOT is the owner and TPC is the contractor.[3] The Prime Contract contains a prompt payment provision[4] (the "Prompt Payment Provision").

In the current dispute, Diamond alleges that TPC withheld and delayed progress payments owed to Diamond under the Subcontracts, in direct contravention of the Prompt Payment Provision.[5] Pursuant to the Provision, TPC was required to pay Diamond for the work that Diamond completed within 30 days of TPC's receipt

---

[2] Compl. at Ex.1 at 1; *id.* at Ex. 2 at 1.

[3] Compl. at Ex.1 at 15 (the "terms, conditions, documents, attachments, etc. therein [of the Prime Contract] are included in the Subcontract Agreement"); *see also id*. at Ex. 2 at 15.

[4] The Prompt Payment Provision states: "The prime contractor/consultant receiving payments shall, within 30 days of receipt of any payment, file a statement with the Department on a form to be determined by the Department that all subcontractors furnishing labor or material have been paid the full sum due them at the stage of the contract, except any funds withheld under the terms of the contract as required by Chapter 8, Title 17 of the Delaware Code annotated and as amended. Any delay or postponement of payment from the above referenced time frame may occur only for good cause following written approval of Del DOT. This clause applies to both DBE and non-DBE subcontractors." Compl. at ¶ 11.

[5] Compl. at ¶¶ 29-34, 46-48.

of payment from DelDOT.  The complaint seeks: 1) money damages for the breach of the Subcontracts; 2) money damages for the breach of a materials contract between TPC and Diamond;[6] and 3) attorneys' fees for bad faith breaches of the Subcontracts.

The central issue raised by this motion is where the underlying dispute between Diamond and TPC should be heard.  The Subcontracts have a few provisions that bear on this question.  The most obviously relevant is Section 2(E), the arbitration provision, which provides that:

> All claims of Subcontractor arising out of acts or omissions of Owner shall be presented to Owner by Contractor on behalf of Subcontractor and finally resolved through the claims procedure[7] (arbitration, litigation or otherwise) applicable between Contractor and Owner.  For purposes of applying the preceding sentence, *Contractor shall decide whether Subcontractor's claims arise out of the acts or omissions of Owner* . . . All other claims and disputes between the

---

[6]     TPC does not move to dismiss Count III of the Complaint relating to an alleged breach of a materials contract between TPC and Diamond. *See* Compl. at ¶¶ 55-66. In its motion, TPC suggests that it has determined that the claims asserted by Diamond as set forth in the Complaint all arise out of the acts or omissions of DelDOT, and thus are subject to arbitration.  That said its motion, the parties' subsequent submissions, and the oral argument all focused on the Subcontracts, and therefore this opinion only addresses whether the Subcontracts compel arbitration of Counts I, II, and IV of the Complaint.

[7]     Importantly, the parties do not dispute that the applicable claims procedure here is arbitration.  The Prime Contract between DelDOT and TPC incorporates the DelDOT supplemental specifications to the August 2001 Standard Specifications (revised November 24, 2014). Defendant's Motion to Dismiss ("Def.'s Mot."), at ¶ 3.   Section 105.15 of these specifications provides a claims procedure that culminates in an arbitration pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association.  *See* Def.'s Mot. at Ex. B.

parties shall be decided by the appropriate court in New Castle County, Delaware."[8]

Also relevant is Section 12, which provides that the Subcontracts:

"shall be construed and enforced with and under the laws of the State of Delaware . . . Venue shall lie in the appropriate Court in New Castle County, Delaware. The parties expressly agree to submit to the service of process in and to the jurisdiction of the Courts of the State of Delaware in connection with any dispute, claim or controversy arising under the Subcontract."[9]

With these pertinent provisions in mind, the Court turns to resolving the parties' dispute as to whether Diamond's claims must be arbitrated.

## II. Legal Analysis

The legal standards governing this motion are familiar. TPC moves to dismiss under Superior Court Civil Rule 12(b)(1) on the ground that the Subcontracts require Diamond to arbitrate the claims in seeks to litigate in this Court.[10] A 12(b)(1) motion will be granted if the parties "contracted to arbitrate the claims asserted in the

---

[8]      Compl. at Ex.1 at Section 2(E); *id.* at Ex. 2 at Section 2(E) (emphasis added).

[9]      Compl. at Ex.1 at Section 12; *id.* at Ex. 2 at Section 12.

[10]      Diamond has also moved to dismiss under Superior Court Civil Rules 12(b)(3) and 12(b)(6) but does not provide its reasoning for dismissal under these rules. Even though the Supreme Court has observed that an arbitration clause is a special type of forum selection clause, *see First Options Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1195), the Court will decide this motion under Rule 12(b)(1) and thus does not need to address TPC's motion under Rules 12(b)(3) or 12(b)(6).

6

complaint."[11]  In other words, the Court lacks subject matter jurisdiction to adjudicate disputes that the parties have contractually agreed to arbitrate.[12]  "A strong presumption exists in favor of arbitration and, accordingly, contractual arbitration clauses are generally interpreted broadly by the courts."[13]  This presumption, however, "will not trump basic principles of contract interpretation."[14]

The principles of contract interpretation that apply are equally uncontroversial. When interpreting an arbitration provision, courts "apply ordinary state-law principles that govern the formation of contracts."[15]  By their explicit terms, the Subcontracts "shall be construed and enforced with and under the laws of the State of Delaware."[16]  Contracts are to be interpreted as written, and the Court gives effect to their clear and unambiguous terms.[17]  At the motion to dismiss stage, the Court

---

[11]  *Li v. Standard Fiber, LLC*, 2013 WL 1286202, at *4 (Del. Ch. Mar. 28, 2013); *see also W. IP Commc'ns, Inc. v. Xactly Corp.*, 2014 WL 3032270, at *5 (Del. Super. June 25, 2014).

[12]  *NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429 (Del. Ch. 2007) (citing *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 295 (Del. 1999)).

[13]  *Id.* at 430 (citations omitted).

[14]  *Id.* (citation omitted).

[15]  *First Options Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1195).

[16]  Compl. at Ex.1 at Section 12; *id.* at Ex. 2 at Section 12.

[17]  *Allied Capital Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).

may address legal issues surrounding the "proper interpretation of language in a contract ... [w]hen the language of [the] contract is plain and unambiguous."[18] In the case of contracts that contain arbitration provisions, "the policy in favor of arbitration requires that doubts regarding whether a claim should be arbitrated, rather than litigated, be resolved in favor of arbitration."[19]

A. *The Issue of Arbitrability Should Be Decided by This Court*

The parties do not dispute whether the issue of substantive arbitrability should be decided by the Court or an arbitrator. Nevertheless, the Court must determine this threshold question.[20] Arbitrability "is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."[21] Contracting parties

---

[18] *Id*. Conversely, if a contract can be read in more than one reasonable way, the Court should look to parol evidence, and, ultimately, "give the contract the most reasonable interpretation that best reflects the parties' apparent intent." *Willie Gary LLC v. James & Jackson LLC*, WL 75309, at *5 (Del. Ch. Jan. 10, 2006), *aff'd*, 906 A.2d 76 (Del. 2006) (citing *Judge v. Rago*, 570 A.2d 253, 257 (Del.1990)). Here, neither party suggests that parol evidence is necessary to interpret the arbitration provision itself in Subcontracts and the Court will not consider any extrinsic evidence submitted by the parties.

[19] *Willie Gary LLC v. James & Jackson LLC*, 2006 WL 75309, at *5; *see also SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998).

[20] *Legend Nat. Gas II Hldgs., LP v. Hargis*, 2012 WL 4481303, at *4 (Del. Ch. Sept. 28, 2012). This is a "gateway question[ ] about the scope of an arbitration provision and its applicability to a given dispute." *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006).

[21] *Id.* at 79 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 (2002)) (internal quotations omitted).

reserve the question of arbitrability for arbitrators only where: (1) "the arbitration clause generally provides for arbitration of all disputes;" and (2) the contract "incorporates a set of arbitration rules that empower arbitrators to decide arbitrability."[22]

Here, the Court must determine the question of arbitrability because the arbitration provision at issue, Section 2(E) of the Subcontracts, does not provide for the arbitration of all disputes. Rather, the only claims to be arbitrated are those that "ari[se] out of acts or omissions of [] [DelDOT]."[23] It is unclear whether the Subcontracts, through the incorporation of the Prime Contract, include a set of arbitration rules[24] that empower arbitrators to decide arbitrability, but the Court need not address this issue given that Section 2(E) does not provide for the arbitration of all disputes. As such, the Court will determine substantive arbitrability in this case.

---

[22]  *Id.* at 80; *see also 360 Campaign Consulting, LLC v. Diversity Commc'n, LLC*, 2020 WL 1320909, at *3 (Del. Ch. Mar. 20, 2020).

[23]  Compl. at Ex.1 at Section 2(E); *id.* at Ex. 2 at Section 2(E). And this the case only if arbitration is the applicable claims procedure, between TPC and DelDOT, as it is here. Section 2(E) states plainly that "[a]ll other claims and disputes between the parties shall be decided by the appropriate Court in New Castle County, Delaware." *Id.*

[24]  The parties do not dispute that Section 105.15 of the DelDOT specifications contains the applicable dispute resolution procedure. Section 105.15 "provides a detailed claim procedure, which, unless a claim is resolved, culminates in an arbitration pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association." Def.'s Mot., at 2; *id.* at Ex. B.

B. *Diamond's Breach of Contract Claims and Related Attorneys' Fees Claim Must Be Arbitrated*

The central issue of this motion is whether Diamond can pursue its claims in this Court, or whether they must go to arbitration. To determine whether the claims are subject to arbitration, the Court must engage in a two-part inquiry, as set forth in *Parfi Holding AB v. Mirror Image Internet, Inc.* by the Delaware Supreme Court: (1) "the court must determine whether the arbitration clause is broad or narrow in scope;" and (2) "the court must apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration."[25] "If the court is evaluating a narrow arbitration clause, it will ask if the cause of action pursued in court directly relates to a right in the contract."[26] If the arbitration clause is broad in scope, however, the court "will defer to arbitration on any issues that touch on contract rights or contract performance."[27]

---

[25] *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002).

[26] *Id.*

[27] *Id.*

Section (2)E is narrow in scope. "An arbitration clause is narrow if arbitration is limited to specific types of disputes."[28] Section 2(E) compels arbitration (if arbitration is the appropriate claims procedure) with respect to "claims of [Diamond] arising out of acts or omissions of [DelDOT]."[29] "All other claims and disputes between the parties" are to be litigated in the appropriate court in New Castle County, Delaware."[30] Accordingly, the Court must decide if the causes of action pursued by Diamond directly relate to a right in the Subcontracts.

Diamond's breach of contract claims and related attorneys' fee claim implicate the rights provided for under the Subcontracts. Diamond's claims plainly depend on the existence of the Subcontracts, as the claims are centered on payments due under the Subcontracts.[31] In deciding whether the dispute is one that, on its face,

---

[28] *Specialty Dx Holdings, LLC v. Lab'y Corp. of Am. Holdings*, 2020 WL 5088077, at *6 (Del. Super. Jan. 31, 2020).

[29] Compl. at Ex.1 at Section 2(E); *id.* at Ex. 2 at Section 2(E).

[30] *Id.*

[31] *Compare with Parfi*, 817 A.2d at 156–57 (holding that certain fiduciary duty claims did not arise out of the underlying contractual provisions); *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 584–85 (Del. Ch. 2006) (holding that advancement rights arose from separate agreements which did not contain arbitration provisions). As noted, the parties do not dispute that the Subcontracts incorporate the Prime Contract and its dispute resolution mechanisms.

11

falls within the arbitration provision, the Court cannot consider "any aspect of the merits of the claim sought to be arbitrated" and will not do so here.[32]

Diamond's main argument is that its claims do not "aris[e] out of acts or omissions of [DelDOT]" and spends the bulk of its opposition providing evidence to bolster its assertion. But Diamond ignores the plain language of the following sentence in the arbitration provision: "For the purposes of applying the preceding sentence, [TPC] shall decide whether [Diamond's] claims arise out of the acts or omissions of [DelDOT]."[33] The arbitration provision's plain language requires that TPC determine whether Diamond's claims arise out of the acts or omissions of DelDOT. Diamond would have the Court classify the dispute and determine whether its claims arise out of the acts or omissions of DelDOT, something clearly not contemplated by the arbitration provision.

Diamond further argues that allowing TPC "in its unfettered discretion" to make such a decision would "arbitrarily and unreasonably deprive [it] of the bargained-for venue provision thereby effectively negating that very position,"[34] noting that when "a contract vests discretion in one contracting party, that discretion

---

[32] *CAPROC Manager, Inc. v. Policemen's & Firemen's Ret. Sys. of City of Pontiac*, 2005 WL 937613, at *2 (Del. Ch. Apr. 18, 2005) (quoting *SBC Interactive, Inc.*, 714 A.2d at 761).

[33] Compl. at Ex.1 at Section 2(E); *id.* at Ex. 2 at Section 2(E).

[34] Pl.'s Opposition ("Pl.'s Opp."), at 7.

12

must be exercised reasonably."[35]  This similarly misses the mark.  Not only are the cases cited by Diamond inapposite,[36] but more fundamentally, Diamond again ignores the plain language of the arbitration provision.

In essence, Diamond asks the Court to rewrite the language of the provision. "Absent some ambiguity, Delaware courts will not distort or twist contract language under the guise of construing it,"[37] and the Court declines to do so here.  "When the language of a contract is clear and unequivocal, a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create new contract rights, liabilities and duties to which the parties had not assented."[38] While Diamond might not like what the arbitration provision in the Subcontracts affords to TPC, it cannot ignore it.  "Delaware is a freedom of contract state, with a

---

[35]    *Id.*

[36]    Diamond refers to a series of cases that deal with discretion in the context of the invocation of the implied covenant of good faith and fair dealing, *see* Pl.'s Opp. at 7, but this is not an issue raised by the parties and the case law is not applicable here.

[37]    *Allied Cap. Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006) (citing *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)) (internal footnotes omitted).

[38]    *Id.*

policy of enforcing the voluntary agreements of sophisticated parties in commerce."[39]

## III. Conclusion

This Court lacks jurisdiction to consider Diamond and TPC's dispute over alleged breaches of the Subcontracts and its related attorneys' fees claim. Accordingly, TPC's motion to dismiss this action pending a resolution of Diamond's claims pursuant to the arbitration provision of the Subcontracts is GRANTED in part. Counts I, II, and IV must be adjudicated by an arbitrator. This action is stayed pending the results of the arbitration.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams
_____
**Meghan A. Adams, Judge**

---

[39] *Pers. Decisions, Inc. v. Bus. Plan. Sys., Inc.*, 2008 WL 1932404, at *6 (Del. Ch. May 5, 2008), *aff'd*, 970 A.2d 256 (Del. 2009) (citing *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1061 (Del. Ch. 2006)).

14