**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: April 14, 2022
Date Decided: July 13, 2022

Elena C. Norman, Esquire
Richard J. Thomas, Esquire
Young Conaway Stargatt
  & Taylor, LLP
1000 North King Street
Wilmington, Delaware 19801

David J. Teklits, Esquire
Kevin M. Coen, Esquire
Alexandra M. Cumings, Esquire
Morris, Nichols, Arsht
  & Tunnell LLP
1201 North Market Street
Wilmington, Delaware 19801

RE: *Glen Schwaber v. Erel Margalit, et al.*,
C.A. No. 2021-1038-LWW

Dear Counsel:

This decision concerns the defendants' motion to dismiss for lack of subject matter jurisdiction or, alternatively, to stay this action. The plaintiff has advanced a single claim to nullify the certificates of cancellation of certain defendant entities on behalf of which he is pressing derivative claims in arbitration. This court has subject matter jurisdiction over the nullification claim. For the reasons discussed below, however, I conclude that a stay pending the resolution of the arbitration is appropriate. This action could require the court to assess the merits of claims currently in arbitration, which risks frustrating the parties' agreement to engage in

alternative dispute resolution. This action may also become moot, depending on the outcome of the arbitration. The motion is therefore granted insofar as the case will be stayed until further order of the court.

## I. FACTUAL BACKGROUND[1]

Defendant JVP Corp IV, Inc. ("Corp. IV") is a Cayman corporation and a part of Jerusalem Venture Partners ("JVP"), a venture capital firm based in Israel.[2] Corp. IV was the general partner of defendant Jerusalem Partners IV, L.P. ("Fund GP") and the managing member of defendant JVP IV, L.L.C ("Fund GP LLC").[3] Defendant Erel Margalit is the founder and chairman of JVP and the president of Corp. IV.[4]

The other defendants in this action are—like Fund GP and Fund GP LLC— canceled JVP entities.[5] Those former entities are Jerusalem Venture Partners IV, L.P., Jerusalem Venture Partners Entrepreneurs Fund IV, L.P. (the "Entrepreneur Fund"), and Jerusalem Venture Partners IV-A, L.P. (together, the "Funds" and with Fund GP and Fund GP LLC, the "Fund IV Entities").

---

[1] This background is drawn from the plaintiff's Verified Complaint and the documents it incorporates by reference. Dkt. 1 ("Compl."); *see Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 818 (Del. 2013).

[2] Compl. ¶¶ 3, 20.

[3] *Id.* ¶ 20.

[4] *Id.* ¶ 19.

[5] *Id.* ¶¶ 20-21, 23-25, 36.

Plaintiff Glenn Schwaber is a former employee of JVP who left the company in late 2006.[6] Schwaber was a limited partner of the Entrepreneur Fund and a member of Fund GP LLC.[7]

The Funds were each governed by a limited partnership agreement; Fund GP LLC was governed by an LLC Agreement; and Fund GP was governed by a limited partnership agreement (together, the "Governing Agreements").[8] Consistent with those Governing Agreements, the Funds were originally intended to last for ten years. The Fund GP extended the Funds' duration for a number of years with the approval of the required majority of their respective limited partners.[9]

The last of those extensions expired on December 31, 2017.[10] On or around January 1, 2018, the Funds commenced the process of liquidating and winding up.[11] On January 23, 2020, certificates of cancellation were filed for the Funds, Fund GP, and Fund GP LLC with the Delaware Secretary of State.[12]

---

[6] *Id.* ¶ 18.

[7] *Id.*

[8] *Id.* ¶ 43.

[9] *Id.* ¶ 66.

[10] *Id.* ¶¶ 66-67.

[11] *Id.* ¶ 67.

[12] *Id.* ¶¶ 18-25.

On November 30, 2021, in accordance with mandatory arbitration clauses in the Governing Agreements, Schwaber commenced arbitration before the American Arbitration Association relating to the liquidation of the Funds' last remaining substantial asset.[13]  In 2019, the Funds had sold their stock interests in a third-party company to certain newly created entities (the "2019 Transaction").[14]  Schwaber's statement of claims in the arbitration purports to bring nine counts derivatively and double derivatively on behalf of the canceled Fund IV Entities for breach of fiduciary duty, breach of contract, and unjust enrichment.[15]  Those claims concern, among other things, the merits of the 2019 Transaction.

The day after filing his arbitration demand, Schwaber filed a single-count Verified Complaint in this court, seeking to nullify the certificates of cancellation of the five Fund IV Entities.[16]  Schwaber's Complaint restates verbatim many of the factual allegations underlying the claims he is pursuing in arbitration.[17]  He alleges

---

[13] *See* Compl. Ex. C, Ex. D (Dkt. 1).

[14] *See* Compl. ¶¶ 69-70.

[15] *See* Compl. Corrected Ex. A ¶¶ 151-94 (Dkt. 45).

[16] Dkt. 1.

[17] Schwaber has challenged the confidential treatment of his Complaint and the exhibits to that Complaint.  *See* Dkts. 6, 25, 26, 33.  The defendants have moved for continued confidential treatment on the grounds that they bargained for private arbitration and Schwaber is attempting to air grievances that would otherwise remain non-public.  *See* Dkts. 19, 32.

that he is seeking nullification so that the Fund IV Entities can proceed as derivative claimants (and, in the case of Fund GP, as a respondent).[18]

On December 28, 2021, the defendants filed the present motion to dismiss or stay.[19] Briefing was completed on March 28, 2022.[20] I heard oral argument on that motion on April 14, 2022.[21]

## II. LEGAL ANALYSIS

The defendants move to dismiss this action under Court of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction due to the mandatory arbitration clauses in the Governing Agreements. In the alternative, they ask that this action be stayed pending the resolution of the arbitration. I conclude that the latter form of relief is appropriate.

### A. Subject Matter Jurisdiction

When considering a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, I must take the allegations in the complaint as true and construe all reasonable inferences in the non-movant's favor.[22] "The burden of establishing

---

[18] *See* Compl. ¶¶ 141-60.

[19] Dkt. 28.

[20] *See* Dkt. 65.

[21] Dkts. 68, 71.

[22] *See de Adler v. Upper N.Y. Inv. Co.*, 2013 WL 5874645, at *7 (Del. Ch. Oct. 31, 2013).

the Court's subject matter jurisdiction rests with the party seeking the Court's intervention."[23]

Despite seeking dismissal on that basis, the defendants acknowledge that this court has subject matter jurisdiction over Schwaber's nullification claim.[24] A motion to dismiss for lack of subject matter jurisdiction will be granted in favor of arbitration only if the "dispute is one that, on its face, falls within the arbitration clause of the contract."[25] The arbitration clauses in the Governing Agreements call for arbitrating "[a]ny controversy or claim arising out of or relating to th[e] Agreement, or the breach thereof."[26] But Schwaber's nullification claim does not arise from the Governing Agreements.

The defendants do not meaningfully dispute that reality. Instead, their arguments in favor of dismissal largely concern *when* the court should entertain Schwaber's nullification claim. They contend that if the arbitrators resolve Schwaber's claims in the defendants' favor, there may never be a need for a nullification proceeding. That is not a matter of subject matter jurisdiction but of

---

[23] *Ropp v. King*, 2007 WL 2198771, at *2 (Del. Ch. July 25, 2007).

[24] *See* Defs.' Opening Br. at 2, 11 (Dkt. 28).

[25] *NAMA Hldgs. v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429 (Del. Ch. 2007) (quoting *SBC Interactive, Inc. v. Corp. Media P'rs*, 714 A.2d 758, 761 (Del. 1998)).

[26] *See* Compl. Ex. C § 13.6, Ex. E § 6.12.

timing and efficiency better addressed below with regard to the defendants' alternative request for a stay.

### B.      Stay Pending Arbitration

The central issue before the court is whether this nullification action should proceed alongside the arbitration or (subject to its outcome) await the arbitration's conclusion. "[T]his Court possesses the inherent power to manage its own docket and may, on the basis of comity, efficiency, or common sense, issue a stay pending the resolution of an arbitration, even for those claims that are not arbitrable."[27] In my view, it would be more equitable and efficient to stay this action pending the conclusion of the arbitration.

First, as the defendants argue, allowing this action to proceed now could frustrate the parties' bargained-for right to mandatory arbitration. The pending arbitration will resolve Schwaber's merits-based claims in accordance with the Governing Agreements. Allowing this nullification action to proceed could require the court to undertake an independent assessment of the 2019 Transaction at issue in those claims before the tribunal has ruled.

---

[27] *Julian v. Julian*, 2009 WL 2937121, at *3 (Del. Ch. Sept. 9, 2009).

Schwaber cites this court's decision in *Capone v. LDH Management Holdings LLC* to assert that this action can be resolved without wading into the merits.[28] But the facts of this case are quite different from those in *Capone*. There, the parties had not agreed to resolve their dispute in arbitration but were litigating in New York state court.[29] After the plaintiffs filed an action in this court to nullify the certificates of cancellation of two limited liability companies they were suing in New York, the New York court dismissed all but the plaintiffs' breach of contract claims, which were stayed pending the outcome of the Delaware nullification action.[30] Vice Chancellor Glasscock then addressed whether the defendants violated Section 18-804(b) of the Delaware Limited Liability Company Act by canceling the LLCs without setting aside a reserve to cover the plaintiffs' known breach of contract claims. He interpreted Section 18-804(b) to require the LLCs to make provision for all potential non-frivolous claims against them of which they had notice before winding up.[31]

By contrast, Schwaber asks this court to nullify the Fund IV Entities' certificates of cancellation to sue on behalf of the entities at the same time that the

---

[28] 2018 WL 1956282 (Del. Ch. Apr. 25, 2018).

[29] *Id.* at *6.

[30] *Id.*

[31] *Id.* at *14.

merits of their dispute are being addressed in private arbitration.[32] The question before this court is not whether the defendants made reasonable provision for known and previously-asserted claims against the canceled entities (as in *Capone*) but whether the defendants should have distributed or made reasonable provision for legal claims belonging to the Fund IV Entities.[33] Resolving that matter could require this court to assess the merits of yet untested claims concerning the 2019 Transaction—the very claims the parties agreed to arbitrate.[34] Beyond the policy-based problems with assessing claims that the parties have elected to resolve in alternative dispute resolution, advancing this action could lead to a ruling by this court before the arbitrators decide the plaintiffs' claims and perhaps to conflicting judgments.[35]

---

[32] Pl.'s Answering Br. 10 (Dkt. 60).

[33] *See* Compl. ¶¶ 141-60.

[34] *See In re Arrow Inv. Advisors, LLC*, 2009 WL 1101682, at *1 (Del. Ch. Apr. 23, 2009) (dismissing dissolution action where the plaintiff "was required to press his fiduciary duty claims in arbitration" but did not and refusing to "entertain a claim for dissolution premised on unproven breaches of fiduciary duty"); *see also Havens v. Leong*, C.A. No. 2021-0033-PAF (Del. Ch. Dec. 3, 2021) (ORDER) (staying dissolution action in deference to a prior-pending action where allowing the dissolution action to advance risked conflicting rulings and a receiver could petition the court for dissolution at the appropriate time).

[35] *See Xpress Mgmt., Inc. v. Hot Wings Int'l, Inc.*, 2007 WL 1660741, at *6 (Del. Ch. May 30, 2007) (stating that "the Court of Chancery's inherent equitable discretion should not stand idle" when deciding to stay a dissolution action in favor of a separate litigation that would resolve which assets the company owned given, among other things, the risk of conflicting rulings).

The history of this litigation further supports my conclusion that proceeding now could impair the defendants' right to private alternative dispute resolution. For example, Schwaber has moved to challenge the confidential treatment of his Complaint (which restates verbatim many of the allegations at issue in the arbitration) and the exhibits to his Complaint (including the arbitration statement of claims).[36] He has also sought discovery in this court that relates to the claims in arbitration. By agreeing to arbitrate, the parties also agreed that American Arbitration Association rules governing discovery and confidentiality would apply in resolving their claims. That agreement could be rendered meaningless if the rules of this court applied instead.

Declining to stay this action pending the arbitration would also be inefficient. Schwaber argues that, without nullification, he will be foreclosed from attempting to bring derivative claims to recover for the Fund IV Entities' purported losses. But Schwaber sought nullification *after* commencing the arbitration, which has been proceeding for nearly eight months. Neither party has indicated that the arbitrators have declined to hear Schwaber's derivative or double derivative claims at this juncture (and that is a matter for the arbitrators—not me—to decide).

---

[36] *See* Dkts. 6, 25, 26, 33; *supra* note 17.

In fact, the defendants have repeatedly represented that they will not assert the Fund IV Entities' statuses as a defense in the arbitration.[37] They have also made clear that nothing prevents Schwaber from later seeking nullification if doing so becomes necessary for him to obtain a complete remedy. If the arbitration panel rules in the defendants' favor, however, this action would be moot.

In addition, the defendants assert that granting nullification could lead to a variety of unintended consequences. For example, they say that nullifying the Fund IV Entities' cancellations would reimpose various contractual and legal rights and obligations under the Governing Agreements and Delaware law. They also argue that the entities would once again be subject to reporting obligations.[38] Although no evidence is in the record supporting these concerns, I am mindful that the imposition of any such complexities will be unnecessary if the claims fail in arbitration.

If the arbitration panel determines that Schwaber cannot pursue claims on behalf of the Fund IV Entities without this court first addressing nullification,

---

[37] Mot. to Dismiss Tr. Apr. 14, 2022 at 8-9 (Dkt. 71); Defs.' Reply Br. at 1-2 (Dkt. 65). This representation gives rise to the question of whether canceled entities' inability to sue is waivable. The parties did not brief that issue and—should it arise—it would more appropriately be addressed by the tribunal hearing Schwaber's derivative and double derivative claims.

[38] *See* Defs.' Reply Br. 12-13.

nothing prevents Schwaber from moving to lift the stay of this action. The same is true if Schwaber prevails in arbitration and nullification becomes necessary to obtain a complete remedy. To press forward in this case now, however, risks frustrating the defendants' bargained for arbitration right, inconsistent judgments by this court and the tribunal, and the public airing of a dispute that the parties agreed to privately resolve. It also could lead to needless litigation in this court and to additional complexities if the Fund IV Entities are revived. As such, a stay is appropriate.

## III.    CONCLUSION

For these reasons, the defendants' motion to dismiss is denied and their request to stay this action pending the resolution of the arbitration is granted. The parties shall promptly inform the court of any developments in the arbitration that are pertinent to this ruling.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor