# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GOAL ACQUISITIONS CORP., a
Delaware Corporation, and GOAL,
ACQUISITIONS NEVADA CORP.,
a Nevada Corporation,

        Plaintiffs,

        v.

AMAN SHARMA, ESQUIRE, and
THE SHARMA LAW FIRM, LLC,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

N24C-04-195 JJC

## MEMORANDUM OPINION & ORDER

Submitted:  April 15, 2025
Decided:     June 17, 2025

Plaintiffs Goal Acquisitions Corp. and Goal Acquisitions Nevada Corp., (hereinafter, collectively "Goal") sue Defendants Aman Sharma, Esquire and The Sharma Law Firm, LLC (hereinafter, collectively "Mr. Sharma") in the Superior Court. Goal presents an amended complaint alleging that Mr. Sharma committed legal malpractice when he represented Goal in a prior Court of Chancery action. Mr. Sharma now moves to dismiss Goal's amended complaint.

As brief background, Digital Virgo had allegedly breached an agreement to merge with Goal, a publicly traded special purpose acquisition company. As a result, Goal retained Mr. Sharma to file a Chancery complaint to seek expedited injunctive relief. Goal had sought to prevent Digital Virgo from acting inconsistently with the intent to consummate the merger (hereinafter "the underlying action"). The underlying action sought to maintain only the status quo between the merging parties pending a binding arbitration.

In the present action, Goal contends that Mr. Sharma's negligence caused it to lose the underlying action.[1] According to Goal, the loss of the underlying action cost it the merger. Mr. Sharma counters by claiming that Goal cannot satisfy the third required element in a legal malpractice action—the "resulting loss" element. In *litigation* malpractice actions such as this, Delaware applies the "case within a case" approach to that element. In other words, Goal must ultimately prove under that theory that it would have succeeded in the underlying case to recover. If it cannot, there can be no recovery.

Mr. Sharma's motion asserts three reasons for why Goal could not have succeeded in the underlying action as a matter of law. They include: (1) Chancery lacked subject matter jurisdiction over the underlying complaint because the agreement between Goal and Digital Virgo contained a mandatory arbitration provision that divested Chancery of subject matter jurisdiction; (2) Delaware lacked personal jurisdiction over Digital Virgo in the underlying action; and (3) Goal's amended complaint fails to state a claim because it seeks recovery for the loss of chance of future success, which is not compensable in a legal malpractice action.

For the reasons to follow, the Court resolves all three contentions based on the sufficiency of Goal's pleading. Namely, the amended complaint adequately alleges that the Court of Chancery had subject matter jurisdiction over the underlying action notwithstanding an arbitration provision in the relevant agreement. Furthermore, Goal sufficiently alleges that Delaware had personal jurisdiction over Digital Virgo under the appropriate lens – that of Superior Court Rule 12(b)(6). Finally, the

---

[1] Goal's three count complaint also included claims styled in negligence and *respondeat superior*—the former as to Mr. Sharma, individually, and the latter as to The Sharma Law Firm, LLC. The negligence claim is largely redundant as to the legal malpractice claim. Moreover, Mr. Sharma's motion to dismiss addressed only the legal malpractice claim and does not further address the *respondeat superior* count. Because the parties addressed only the legal malpractice claims, the Court focuses only on them in this decision.

amended complaint sufficiently alleges that Mr. Sharma's negligence caused Goal harm. As a result, Mr. Sharma's motion to dismiss is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts recited herein derive from the amended complaint and two documents integral to the amended complaint. Those documents include: (1) the Court of Chancery complaint in the underlying action (hereinafter, the "Chancery complaint" or the "underlying complaint"); and (2) the Amended and Restated Business Combination Agreement between Goal and Digital Virgo (hereinafter, the "ABCA" or the "Agreement").

As alleged in the amended complaint, Goal is a special purpose acquisition company ("SPAC")[2] formed to effectuate a corporate merger with Digital Virgo, a French mobile payment solutions company.[3] On February 8, 2023, Goal and Digital Virgo executed the ABCA, which outlined the terms of the planned merger.[4] According to Goal, Digital Virgo breached the ABCA in July 2023 when it failed to meet its pre-closing obligations.[5] Thereafter, Digital Virgo notified Goal that it considered the ABCA terminated as of August 2023.[6]

As a result of Digital Virgo's alleged breach, Goal initiated arbitration proceedings in September 2023 in the International Court of Arbitration of the International Chamber of Commerce (hereinafter, the "ICC Arbitration"). There,

---

[2] A special purpose acquisition company, or SPAC, is a "modern investment vehicle used to raise capital through an IPO for the sole purpose of merging with a private company to then become a combined public company." Austin R. Niggebrugge, *Under Delaware Law, Is the Business Judgment Rule Categorically Unobtainable for Special Purpose Acquisition Companies?*, 47 Del. J. Corp. L. 291, 293 (2023). A SPAC's charter grants it a limited lifespan—usually between 18 and 24 months—to complete the merger transaction it was formed to consummate. *Delman v. GigAcquisitions3, LLC*, 288 A.3d 692, 701 (Del. Ch. 2023). If the SPAC fails to complete the merger within that window, it must liquidate. *Id*.

[3] Am. Compl. at ¶¶ 8, 10 (D.I. 26).

[4] *Id*. at ¶ 10.

[5] *Id*.

[6] *Id*.

Goal sought specific performance and damages.[7] The parties do not dispute the time-sensitive nature of the matter because Goal's SPAC status was set to expire in February 2024. The amended complaint alleges "there was no certainty of how long, if at all, the deal could survive the natural expiration of the SPAC."[8] Goal further alleges that Digital Virgo's walk-away would cause Goal to be delisted from the NASDAQ which, in turn, would cause Goal to suffer monetary and reputational harm.[9] Goal further asserted in the underlying complaint, and maintains in the amended complaint, that it needed to take swift action to prevent Digital Virgo from further breaching the ABCA so Goal could prosecute its claims in the ICC Arbitration.[10]

Thereafter, on October 4, 2023, Goal retained Mr. Sharma to act as local counsel to file the Chancery complaint.[11] Goal paid Mr. Sharma a $10,000 retainer with the condition that he seek expedited relief.[12] Notably, the Chancery complaint sought only expedited preliminary injunctive relief. To that end, the complaint demanded "to preserve the status quo and prevent the merger with [Digital Virgo] from falling apart due to the passage of time as the ICC Arbitration proceeded."[13] Goal alleges that both Goal and its lead counsel notified Mr. Sharma of "the strategy, urgency, and the importance of the expedited action in Delaware as a key component of a successful outcome in the ICC Arbitration."[14]

---

[7] *Id*. at ¶ 11.
[8] *Id*.
[9] *Id*. More specifically, Goal alleges that if Digital Virgo's breach was not substantially mitigated or completely prevented, it would be perceived as having financial troubles, which could lead to "share value devaluation" or "loss of institutional investors." *Id*. Furthermore, Goal alleges that Digital Virgo was aware that time was of the essence and that it was Digital Virgo's strategy to delay the ICC Arbitration for as long as possible to weaken Goal's resources and position. *Id*.
[10] *Id*.
[11] *Id*. at ¶ 14. Goal's lead counsel in the Chancery litigation was an attorney at a South Carolina law firm. *Id*. at ¶ 15.
[12] *Id*. at ¶ 14.
[13] *Id*.
[14] *Id*. at ¶ 15.

Mr. Sharma signed and filed the Chancery complaint on October 13, 2023.[15] The underlying complaint, again signed and filed by Mr. Sharma, alleged two matters that Mr. Sharma now contests: that the Court of Chancery had subject matter jurisdiction over the matter, and Delaware had personal jurisdiction over Digital Virgo.

Mr. Sharma next filed a motion for a preliminary injunction and an accompanying motion to expedite the proceedings.[16] Combined, those motions mirrored the relief requested in the Chancery complaint, which included the following:

(1) enjoining Digital Virgo from taking actions contrary to the Agreement;

(2) ordering Digital Virgo to permit GOAL access to their books, records, and other critical documents;

(3) enjoining Digital Virgo from altering its business structure;

(4) enjoining Digital Virgo shareholders from disposing of, transferring, or encumbering their shares;

(5) enjoining Digital Virgo from using any IP or proprietary information from GOAL for any purpose other than effectuating the transaction; and,

(6) enjoining Digital Virgo from interfering with the completion of the transaction set forth in the Agreement[.][17]

The Court of Chancery then promptly emailed Mr. Sharma to schedule a hearing on Goal's motion to expedite and proposed November 3, 2023, as the date.[18] Goal alleges, however, that Mr. Sharma failed to respond to that email and November 3rd came and went.[19] Chancery then summarily denied Goal's motion to expedite

---

[15] *Id.* at ¶ 16.
[16] D.I. 26, at ¶ 19.
[17] *Id.*
[18] *Id.* at ¶ 21.
[19] *Id.*

the proceedings.[20]  Mr. Sharma allegedly took no further action to request that the Court reconsider the denial.[21]

The crux of Goal's current suit focuses on Mr. Sharma's failure to secure an order to expedite the proceedings.[22]  That failure, Goal maintains, foreclosed all subsequent litigation options.[23]  According to Goal, it also caused Goal to be delisted from the NASDAQ and caused the merger's collapse.[24]  Furthermore, Goal contends that Mr. Sharma "did not meaningfully advise GOAL of any other actions GOAL could have taken in response to the [Court of Chancery's] denial."[25]  It also contends that Mr. Sharma failed to serve Digital Virgo with the underlying complaint, which made success in the underlying action impossible.[26]

The merger ultimately did not close.  Goal then sued Mr. Sharma for legal malpractice,[27] and Mr. Sharma countered with a motion to dismiss.[28]  Goal then filed an amended complaint in response,[29] and Mr. Sharma renewed his motion to dismiss

---

[20] *Id*. at ¶ 22.

[21] *Id*.

[22] *Id*. at ¶ 23.

[23] *Id.*

[24] *Id*. at ¶ 24.

[25] *Id*. at ¶ 26.  Some of the options Goal alleges would have been available to potentially remedy the situation included filing a request that the Court of Chancery reconsider the denial of the motion to expedite the proceedings or by filing a second motion in accordance with Rule 60(b) on the grounds of mistake, inadvertence, or excusable neglect.  *Id.*

[26] *Id*. at ¶¶ 18, 34(f).

[27] Compl. (D.I. 1).

[28] Mot. to Dismiss (D.I. 17).

[29] D.I. 26.  Goal alleged in the amended complaint that Mr. Sharma "deviated from the applicable standard of care expected of an ordinarily prudent Delaware lawyer" via the following acts or omissions: "(a) [f]ailing to respond to the Chancery Court's communications in a timely manner; (b) [f]ailing to monitor his email when he knew there was an extremely time sensitive matter pending before the Chancery Court; (c) [f]ailing to reasonably, proactively follow up with the Chancery Court when he knew there was an extremely time sensitive matter pending before the Chancery Court; (d) [f]ailing to reasonably follow up and communicate with GOAL and GOAL's local counsel on the status of the expedited request; (e) [f]ailing to advise GOAL of other options to address the Court's denial, including but not limited, requesting the Court reconsider its denial, and/or filing a Court of Chancery Rule 60(b) motion to explain and seek redress of Mr. Sharma's mistake, inadvertence, and/or excusable neglect; [and] (f) [f]ailing to properly serve Digital Virgo with the Delaware Complaint."  *Id.* at ¶ 34.

Goal's amended complaint.[30]  The parties briefed the matter, and the Court heard oral argument on their respective positions on March 26, 2025.  By letter order, the Court asked the parties to provide their positions regarding whether certain documents referenced in the amended complaint, but not attached to it as exhibits, were integral.[31]  The parties simultaneously responded to that inquiry on April 15, 2025.

## II.    THE PARTIES' CONTENTIONS

Mr. Sharma contends that the amended complaint fails to adequately plead a required element in a legal malpractice action—a "resulting loss."  To this end, Mr. Sharma raises three arguments for why he believes Goal inadequately pled that his negligence caused Goal harm.  Namely, he contends that the underlying action could never have succeeded because (1) the Court of Chancery lacked subject matter jurisdiction over the underlying action under a mandatory and exclusive arbitration provision in the ABCA, (2) Delaware lacked personal jurisdiction over Digital Virgo in the underlying action, and (3) Goal's amended complaint seeks to recover only for losing the chance of future success, which, as a matter of law, cannot be considered cognizable harm in a legal malpractice action.

In response, Goal contends that the Court of Chancery had subject matter jurisdiction over the claim because the ABCA recognized its right to seek interim injunctive relief during a pending ICC Arbitration.  Goal further contends that Digital Virgo would have been subject to personal jurisdiction in Delaware because the underlying action and Digital Virgo's considerable contacts with Delaware satisfied the two-part inquiry necessary to determine personal jurisdiction.  Finally, Goal contends that it adequately pled a legally cognizable resultant loss.

---

[30] Mot. to Dismiss (D.I. 30); Am. Mot. to Dismiss (D.I. 31).
[31] Letter Order (D.I. 43).

As to the collateral matter of the scope of the record for this motion, the parties dispute, in part, whether two documents should be considered integral to the amended complaint. Mr. Sharma contends that the ABCA and the Chancery complaint are both integral and should be considered in this motion. Goal concedes that the underlying Chancery complaint is integral but contends that the ABCA is not.

### III. APPLICABLE STANDARDS

When considering a Rule 12(b)(6) motion, the complaint and any documents attached to it generally define the "universe of facts" the Court may consider.[32] A limited exception to this narrow scope permits the Court to consider documents that are integral to the complaint.[33] Generally, a document is considered integral to a complaint "if it is the 'source for the . . . facts as pled in the complaint.'"[34] To that end, such documents may only be considered in "particular instances and for carefully limited purposes."[35]

Delaware is a notice pleading jurisdiction and the standard to survive a motion to dismiss is reasonable conceivability.[36] As such, the Court will not dismiss a claim unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[37] When reviewing a motion to dismiss, the complaint must be considered in the light most favorable to the

---

[32] *Lakeview Loan Servicing, LLC v. Green-Hall*, 2024 WL 4533514, at * 2 (Del. Super. Oct. 21, 2024).

[33] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004).

[34] *Schiavo v. Clover Network, LLC*, 2025 WL 551690, at *3 (Del. Super. Feb. 19, 2025), *as corrected* (Mar. 3, 2025) (quoting *Fortis Advisors LLC v. Allergan W.C. Holding Inc.*, 2019 WL 5588876, at *3 (Del. Ch. Oct. 30, 2019)).

[35] *Wal-Mart Stores*, 860 A.2d at 320 (quoting *In re Santa Fe Pacific Corp. S'holder Litig.*, 669 A.2d 59, 69 (Del.1995)).

[36] *In re Swervepay Acquisition, LLC*, 2022 WL 3701723, at * 6 (Del. Ch. Aug. 26, 2022) (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011)).

[37] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 897 (Del. 2002) (citing *Kofron v. Amoco Chems. Corp.,* 441 A.2d 226, 227 (Del. 1982)).

nonmoving party, all allegations are accepted as true, and all reasonable inferences must flow in favor of the nonmovant.[38] Even vague allegations in the complaint are sufficient if they give the opposing party notice of the claim.[39]

## IV. ANALYSIS

The scope of the record for this motion to dismiss includes Goal's amended complaint and two documents integral to the amended complaint. With the record identified, the focus turns to whether Goal sufficiently pled that it would have won the underlying action but for Mr. Sharma's negligence. For the reasons to follow, the amended complaint sufficiently alleges that Chancery had subject matter jurisdiction over the underlying action and that Delaware had personal jurisdiction over the defendant. The amended complaint also adequately alleges that Goal suffered legally cognizable resultant losses. As a result, Mr. Sharma's motion must be denied.

### A. The ABCA and the Chancery complaint are integral to the amended complaint.

The Court first addresses whether the ABCA and the underlying complaint are integral to Goal's amended complaint.[40] Generally, if a motion to dismiss or a response references documents or evidence not included within the four-corners of the complaint, the Court must either (1) disregard the extraneous material, or (2)

---

[38] *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1160 (Del. 2010) (quoting *Clinton v. Enterprise Rent–A–Car Co.,* 977 A.2d 892, 895 (Del. 2009)).
[39] *Savor, Inc.*, 812 A.2d at 896–97.
[40] Of note, one aspect of Mr. Sharma's motion under Rule 12(b)(6) implicates the question of subject matter jurisdiction in the underlying action. Generally, pursuant to Rule 12(b)(1), the Court may consider matters outside a complaint to determine if it there is subject matter jurisdiction. *See Appriva S'holder Litig. Co. v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007) (recognizing that when deciding a Rule 12(b)(1) motion, the Court need not accept a plaintiff's factual allegations as true and is free to consider facts not alleged in the complaint). Here, although Mr. Sharma's contention implicates only Rule 12(b)(6) directly, the recognition that courts look outside the pleadings when determining subject matter jurisdiction lends further support to considering the ABCA integral since it is the contract that either provided for subject matter jurisdiction or divested Chancery of it.

convert the matter to a motion for summary judgment.[41] Here, the parties stipulate, and the Court independently finds, that the underlying complaint is integral to the amended complaint and should be considered under Rule 12(b)(6). To this end, the amended complaint pervadingly references the Chancery complaint and the underlying action that the Chancery complaint initiated.

The parties, however, do not agree that the ABCA is integral. There is no bright-line test for this inquiry—rather, the answer requires a context-specific analysis.[42] In the most general sense, a document may be considered integral to the complaint if it is the "source for the . . . facts as pled in the complaint."[43]

Here, such a context-specific analysis demonstrates the ABCA's integrality. At the outset, the amended complaint references the ABCA repeatedly and it quotes that Agreement, in significant part. At the highest level, Goal's amended complaint focuses on Mr. Sharma's alleged failure to protect Goal's interests against harm from Digital Virgo. The ABCA becomes central to the allegations in the amended complaint because that contract controlled the parties' rights and obligations. More granularly, the amended complaint references the ABCA at least twelve times and includes several additional references to "the breach" – that is, Digital Virgo's alleged breach of the ABCA.[44] The amended complaint also references the planned merger between Goal and Digital Virgo—controlled by the ABCA—several times. It also specifically references the arbitration provision in the ABCA and a separate ABCA provision, Section 10.13, entitled "Remedies; Specific Performance." Goal

---

[41] Pursuant to Superior Court Civil Rule 12(b), if on a motion to dismiss for failure to state a claim upon which relief can be granted, "matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment." *See Furman v. Delaware Dep't of Transp.*, 30 A.3d 771, 774 (Del. 2011) (explaining that absent either of the two exceptions permitting a court to consider extrinsic materials on a motion to dismiss, in order to consider materials outside the pleadings, the Superior Court is required under Rule 12(b) to formally convert a motion to dismiss into a motion for summary judgment).

[42] *In re Gardner Denver, Inc.*, 2014 WL 715705, at *3 (Del. Ch. Feb. 21, 2014).

[43] *Id*. (citations omitted).

[44] *See e.g.*, D.I. 26, at ¶¶ 10–13, 17, 19.

claims that section permitted it to seek injunctive relief from the courts notwithstanding the arbitration provision.[45] Finally, the amended complaint paraphrases additional portions of the ABCA. Accordingly, the ABCA is a primary source of the facts contained in the amended complaint, and it is unquestionably integral to it.

The incorporation-by-reference doctrine provides further support for this conclusion. That doctrine "allows a court to review an integral document as a whole to ensure that the plaintiff has not misrepresented its contents and that any inference the plaintiff seeks to have drawn is a reasonable one."[46] As such, when "a plaintiff chooses to refer to a document in its complaint, the Court may consider the entire document, even those portions not specifically referenced in the complaint."[47] Otherwise, "complaints that quoted only selected and misleading portions of such documents could not be dismissed . . . even though they would be doomed to failure."[48] For that additional reason, the ABCA should be considered integral and the Court may consider the entire Agreement.

In summary, both the ABCA and the underlying Chancery complaint are integral to Goal's amended complaint. The Court will consider them when drawing the inferences necessary to resolve Mr. Sharma's Rule 12(b)(6) motion.

## B. Goal adequately pleads circumstances that would have permitted recovery in the underlying action.

To recover in a legal malpractice action, a plaintiff must prove: (1) the employment of the attorney, (2) the attorney's neglect of a professional obligation,

---

[45] *Id.* at ¶ 12.

[46] *Teamsters Local 677 Health Servs. & Ins. Plan v. Martell*, 2023 WL 1370852, at *7 (Del. Ch. Jan. 31, 2023) (internal quotation omitted).

[47] *Id.* (quoting *Oklahoma Firefighters Pension & Ret. Sys. v. Corbat*, 2017 WL 6452240, at *13 n. 233 (Del. Ch. Dec. 18, 2017)).

[48] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 70 (Del. 1995) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

and (3) resulting loss.[49]   Mr. Sharma contends that Goal's amended complaint insufficiently pleads the third element—resulting loss.  To prove that element, Goal must demonstrate that "but for [its attorney's] negligence, [Goal] would have been successful in the underlying action."[50]   In that way, this "third element" of a legal malpractice claim combines two of the four traditional elements in any negligence action: causation and damages.

Here, Goal alleges *litigation,* as opposed to transactional, malpractice.  After all, Goal hired Mr. Sharma to prosecute the underlying action as local counsel, not to negotiate or close the merger.  Ultimately, whether Goal suffered a resultant loss will hinge on whether Goal can demonstrate that it would have succeeded in the "case within a case" were it not for Mr. Sharma's negligence.  Today, Goal need only plead that Mr. Sharma's negligence caused it to lose the underlying action or suffer some other legally recognized harm.

As explained below, when considering the amended complaint and the two integral documents, Goal adequately pled that the Court of Chancery had subject matter jurisdiction over the underlying action.  Furthermore, when considering everything alleged as true, the amended complaint and the underlying complaint demonstrate a reasonably conceivable basis to conclude that Delaware had personal jurisdiction over Digital Virgo in the underlying action.  Finally, the amended complaint, read together with the underlying complaint, alleges legally recognized damages.  Those conceivable damages include the $10,000 in attorneys' fees that Goal allegedly paid Mr. Sharma and other harm suffered as a result of the loss of the underlying action.

---

[49] *Sherman v. Ellis*, 246 A.3d 1126, 1131 (Del. 2021).

[50] *Hernandez v. Baird Mandalas Brockstedt & Federico, LLC*, 315 A.3d 1183, 1187 (Del. Super. 2024) (quoting *HealthTrio, Inc. v. Margules*, 2007 WL 544156, at *9 (Del. Super. Jan. 16, 2007)).

## 1. Goal adequately alleges that the ABCA did not preclude Goal from seeking interim relief in the Court of Chancery.

Mr. Sharma first contends that the Court of Chancery lacked subject matter jurisdiction over the underlying action because the arbitration provision in the ABCA divested Chancery of jurisdiction. For that contention, he relies on a provision in the ABCA that he asserts commits all disputes among the parties to arbitration. In response, Goal contends that the ABCA separately preserved its ability to seek injunctive relief that was limited to preserving the status quo pending the ICC Arbitration.

Delaware has longed recognized a strong public policy favoring the resolution of disputes through arbitration.[51] Where parties have agreed to submit their claims to arbitration, "Delaware courts strive to honor the reasonable expectations of the parties and ordinarily resolve any doubt as to arbitrability in favor of arbitration."[52] In fact, where parties contractually agree to submit a certain type of claim or dispute exclusively to arbitration, the courts lack subject matter jurisdiction over such claim or dispute.[53]

Nevertheless, in a case such as this, arbitration is a mechanism of dispute resolution created by contract.[54] No matter how broadly a court may strive to construe the mechanism, it cannot be extended beyond the parameters set in the

---

[51] *See SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998) ("[T]he public policy of Delaware favors arbitration."); *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911 (Del. 1989) ("[T]he public policy of this state favors the resolution of disputes through arbitration.").

[52] *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155–56 (Del. 2002) (citing *SBC Interactive*, 714 A.2d at 761).

[53] *NAMA Holdings, LLC v. Related World Mkt. Ctr.*, LLC, 922 A.2d 417, 429 (Del. Ch. 2007) (citing *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 295 (Del. 1999)); *ITEC Drywall, LLC v. S. Main St. Plaza, LLC*, 2021 WL 3783645, at *4 (Del. Super. Aug. 3, 2021).

[54] *Behm v. Am. Int'l Grp., Inc.*, 2013 WL 3981663, at *5 (Del. Super. July 30, 2013) (quoting *Parfi Holding* AB, 817 A.2d at 156).

underlying agreement.[55]  Thus, a party cannot be required to submit a dispute to arbitration that he or she has not agreed to submit.[56]

When determining whether litigants have properly committed a claim or dispute to arbitration, Delaware courts typically apply the two-part inquiry articulated in *Parfi Holding AB v. Mirror Image Internet, Inc.*[57]  There, the Delaware Supreme Court instructed that:

> [f]irst, the court must determine whether the arbitration clause is broad or narrow in scope.  Second, the court must apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration.[58]

Generally, an arbitration clause is broad in scope when it refers all claims or disputes under the agreement to arbitration.[59]  In contrast, an arbitration clause is narrow in scope when it refers only a limited set of claims or disputes under the agreement to arbitration.[60]

Underscoring these inquiries, principles of contract interpretation require the Court to give priority to the parties' intentions as expressed within the four corners of the contract.[61]  When interpreting a contract, the reviewing court must "read the agreement as a whole and enforce the plain meaning of clear and unambiguous

---

[55] *Id.*

[56] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

[57] 817 A.2d 149 (Del. 2002).

[58] *Id.* at 155; *see also Diamond Materials, LLC v. Tutor Perini Corp.*, 2021 WL 1716969, at *4 (Del. Super. Apr. 30, 2021) (applying the same inquiry when determining whether a party could pursue its claims in Superior Court or whether they could only be decided through arbitration).

[59] *Specialty Dx Holdings, LLC v. Lab. Corp. of Am. Holdings*, 2020 WL 5088077, at *6 (Del. Super. Jan. 31, 2020) (citing *Milton Investments, LLC v. Lockwood Bros., II, LLC*, 2010 WL 2836404, at *6 (Del. Ch. July 20, 2010)).

[60] *Id.*

[61] *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009).

language."[62]  To that end, contract provisions are to be read in *pari materia* "to give each provision and term effect and not render any terms meaningless or illusory."[63]

Here, the parties seize upon competing sections of the ABCA, which they assert resolve the issue of subject matter jurisdiction in their favor.  For his part, Mr. Sharma contends that Chancery lacked subject matter jurisdiction because Subsection 10.03(a) of the ABCA requires that *any* dispute between the parties to the agreement be resolved via International Chamber of Commerce arbitration (again, "ICC Arbitration"). Namely, Subsection 10.03(a) provides:

> [a]ny Action that is based upon, arises out of in connection with or relates to this Agreement or the Ancillary Agreements or the Transactions, including regarding their existence, validity, or termination (a "Dispute") shall first be subject to formal mediation. The Parties concerned will mutually select the mediator and the mediation will be in Paris, France or such other location as the Parties concerned may agree upon.  If no amicable resolution or settlement of the Dispute is reached during the mediation process within sixty (60) days after it commences, then *the Dispute shall be resolved by binding arbitration administered by the International Court of Arbitration of the International Chamber of Commerce ("ICC") and conducted pursuant to its Rules of Arbitration.*  The place of arbitration shall be Paris, France or such other location as the Parties concerned may agree upon, and the language used in the arbitral proceedings shall be English. The arbitration proceedings shall be subject to the substantive laws of the State of Delaware pursuant to Section 10.02.[64]

Mr. Sharma asserts that this provision means that Goal could have never succeeded in the underlying action because Chancery never acquired subject matter jurisdiction over the dispute.  That, he further contends, means Goal suffered no harm because it could have never won the case within a case.

---

[62] *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021) (citations omitted).
[63] *Id*. (internal quotations omitted).
[64] D.I. 30, Ex. A at 81 (emphasis added) [hereinafter, "ABCA at . . ."].

Goal counters by citing Section 10.13 of the ABCA and contends that the underlying action fits comfortably within that provision. That provision provides:

> [t]he Parties acknowledge that money damages may not be an adequate remedy at law if any Party fails to perform any of its obligations hereunder, and accordingly agree *that each Party, in addition to any other remedy to which it may be entitled at Law or in equity, shall be entitled to seek an injunction or similar equitable relief restraining such Party from committing or continuing any such breach (or threatened breach)* and to compel specific performance of the obligations of any other Party this Agreement, without the posting of any bond. *No remedy under this Agreement shall be exclusive of any other remedy, and all available remedies shall be cumulative.*[65]

At the outset, when reading both provisions in *para materia* and assigning meaning to both, the interrelationship between the two cited provisions would make this a close call. On one hand, Section 10.13 could arguably be read to recognize that the nonexclusive remedies referenced apply to only those available through ICC Arbitration. On the other hand, it could be read more broadly as a recognition that arbitration is not the exclusive forum for all disputes because it preserved the parties' ability to seek temporary or preliminary equitable relief from Chancery to guarantee the integrity of the ICC Arbitration.

Neither party cited nor addressed the separate subsection (e) found in Section 10.03, however, which must also be given meaning.[66] Subsection (e) to the arbitration provision provides:

> [f]or the avoidance of doubt, a request by a Party to a court of competent jurisdiction for interim measures necessary to preserve such Party's rights, including pre-arbitration attachments, injunctions, or other equitable relief shall not be deemed incompatible with, or a waiver of the agreement to arbitrate in this Section 10.03.[67]

---

[65] ABCA at 84–85 (emphasis added).
[66] The underlying complaint cited the provision, however. Compl. at ¶ 21 (D.I. 1, 2023-1030-LWW) [hereinafter, "Chancery Compl. at . . ."].
[67] ABCA at 82.

Accordingly, notwithstanding Subsection 10.03(a)'s otherwise broad scope, Subsection 10.03(e) expressly recognizes Goal's right to pursue an injunction to preserve its rights pending the ICC Arbitration. Furthermore, Subsection 10.03(e), read together with Section 10.13's provision regarding non-exclusive remedies, permits a limited carve-out for claims of the type Goal sought to bring in the underlying action—those limited to preserving the status quo pending the ICC Arbitration hearing.[68] Together, Section 10.13 and Subsection 10.03(e) demonstrate that the ABCA did not divest Chancery of subject matter jurisdiction over the underlying action—at least for Rule 12(b)(6) purposes. While the ABCA mandates that ICC Arbitration is the mandatory mechanism responsible for final resolution of disputes between the parties, Goal sufficiently pleads that the ABCA preserved their ability to seek interim equitable relief in Chancery so the dispute could be properly arbitrated.

As a final note, the Court also cannot ignore that Mr. Sharma signed and filed the underlying complaint which he agrees is integral to the amended complaint. There, he alleged on behalf of Goal that Chancery had subject matter jurisdiction over the underlying action.[69] In fact, the underlying complaint alleged that it was Subsection 10.03(e) that expressly provided Goal the carve out to provide that jurisdiction.[70] Because Mr. Sharma signed and filed the underlying complaint, his

---

[68] In *James & Jackson, LLC v. Willie Gray, LLC*, the Delaware Supreme Court analyzed an arbitration clause in an LLC agreement, which contained a similar carve-out to the arbitration provision in the case *sub judice*. 906 A.2d 76 (Del. 2006). There, "the arbitration clause beg[an] by requiring arbitration of *any controversy* arising out of or relating to the LLC Agreement[.]" *Id*. at 81 (emphasis added). The arbitration clause then continued, however, "by expressly authorizing the nonbreaching Members to obtain injunctive relief and specific performance in the courts." *Id*. Thus, despite the arbitration clause's broad language at the outset, that did not require that all disputes arising thereunder be referred arbitration because of explicit language to the contrary. *Id*.

[69] Chancery Compl. at ¶¶ 5, 28.

[70] *Id*. at ¶ 21.

17

accompanying Rule 11 certification also supports a reasonable inference that Chancery had subject matter jurisdiction pursuant to the ABCA.[71]

## 2. Goal sufficiently alleges that Delaware Courts had personal jurisdiction over Digital Virgo in the underlying action.

Mr. Sharma next contends that Goal could not have succeeded in the underlying action because Delaware had no personal jurisdiction over Digital Virgo. To that end, he posits that Goal's amended complaint "is devoid of any factual allegations that would reflect that [Digital Virgo] is subject to personal jurisdiction in Delaware."[72]

From the start, it is important to recognize what Mr. Sharma's motion implicates in terms of personal jurisdiction and what it does not. Namely, Mr. Sharma contends that *the underlying action* could have never succeeded because Delaware lacked personal jurisdiction over Digital Virgo. Digital Virgo, of course, is not a party to the current action. For that reason, Mr. Sharma's motion implicates none of the concerns that would typically accompany subjecting Digital Virgo to a Delaware suit in *the current* action. In contrast, Mr. Sharma is a Delaware attorney. He and his law firm are undisputedly subject to personal jurisdiction in Delaware. Consequently, the question regarding personal jurisdiction becomes important in this legal malpractice case only when determining whether the underlying action was unwinnable because it was absent.[73]

---

[71] *See* Super. Ct. Civ. R. 11(b) (including the certification by the signing party that, *inter alia*, "to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [that] the claims . . . are warranted under existing law [and] the allegations and other legal contentions have evidentiary support.").

[72] Am. Mot. to Dismiss at ¶ 19 (D.I. 31).

[73] Nor is the concern regarding the possible improper subjection of Digital Virgo to Delaware jurisdiction implicated. If Digital Virgo were a defendant in this case, limited discovery regarding personal jurisdiction may have been an economical and more efficient tool available to mitigate the concern. That is not necessary here under the lens of Rule 12(b)(6) review where Mr. Sharma asserts lack of personal jurisdiction over Digital Virgo to defeat an element of Goal's malpractice action.

Here, there is no concern that the Court may be wrongly subjecting a foreign entity to Delaware jurisdiction and protracted discovery absent the ties necessary to establish personal jurisdiction. In cases such as that, some Delaware courts have permitted limited discovery as to personal jurisdiction to mitigate such potential harm.[74] Nevertheless, no such risk is present in this case because Digital Virgo is not a party.

In any event, the standard for determining personal jurisdiction must still be examined to resolve Mr. Sharma's motion—albeit through Rule 12(b)(6)'s more lenient lens. To that end, Delaware courts apply a two-step analysis to determine the propriety of exercising personal jurisdiction over a nonresident.[75] Namely, the Court must evaluate (1) whether Delaware's Long Arm Statute, 10 *Del. C.* § 3104, applies to permit service of process; and (2) whether subjecting the defendant to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment.[76]

For four reasons, the amended complaint and integral documents allege circumstances that permit a reasonable inference that Delaware had personal jurisdiction over Digital Virgo in the underlying action. Together, as pled, they allege a reasonably conceivable basis to infer that Goal could have met both the Long Arm Statute's requirements for service of process and the Due Process Clause's requirements for minimum contacts.

---

[74] *See e.g.*, *Harris v. Harris*, 289 A.3d 310, 336 (Del. Ch. 2023) (recognizing that the court may permit a plaintiff to take limited discovery directed to jurisdictional issues where that plaintiff has asserted a "non-frivolous basis to believe that a defendant could be subject to the court's jurisdiction." This is because "[t]he facts necessary to demonstrate the existence of personal jurisdiction are often in the exclusive control of the defendant."); *Cuppels v. Mountaire Corp.*, 2019 WL 2296242, at *3 (Del. Super. May 29, 2019) (allowing jurisdictional discovery because the burden is on the plaintiff to show that jurisdiction over a defendant is proper).

[75] *LaNuova D & B, S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764, 768 (Del. 1986).

[76] *Id.* Ultimately, there may also be Hague Convention concerns regarding Digital Virgo's susceptibility to service outside the United States in addition to Long Arm Statute considerations regarding susceptibility to service of process. The parties have not raised the issue, so the Court does not now address it.

First, Goal sufficiently alleges that Delaware had personal jurisdiction over Digital Virgo. That, alone, would satisfy Rule 12(b)(6)'s notice pleading requirements. To this end, Mr. Sharama identifies no heightened pleading requirement that applies to what is merely his potential defense to the case within a case inquiry.

Second, the amended complaint makes more than a general, notice-providing, allegation. Namely, Goal alleges the following specific circumstances and actions by Digital Virgo that will later satisfy the two-part inquiry:

(1) Digital Virgo entered into the Agreement with Plaintiffs Goal Acquisitions Corp. and Goal Acquisitions Sponsor LLC, both of which are Delaware corporations. In the months preceding the anticipated merger, Digital Virgo worked closely with Goal Acquisition Sponsor LLC to grow its business, expand its platform, raise capital, enter into new territories, and bring its proprietary one destination platform to Digital Virgo;

(2) Digital Virgo represented to third parties and the public that Digital Virgo and the Delaware entities it was merging with and were operating as "one company" prior to the merger. In or around December 2022, representatives from Digital Virgo (including Digital Virgo's Chief Executive Officer Guillaume Briche, America's Division Head Fran Sanchez, and Chief Operating Officer Eric Tiberghein), met with GOAL's representatives (including Mr. Greystoke, Chief Executive Officer Harvey Schiller, and Board Members David Falk and Donna Orender), to discuss next steps with respect to the merger. At Digital Virgo's request, all parties agreed that immediately following that meeting, the companies would "act as one company" and would represent to third parties and the public that they were in fact operating as "one company" prior to the merger, in order to grow the business prior to closing;

(3) *Digital Virgo undertook concerted efforts to market its products and services in Delaware*; and

20

(4) Digital Virgo had other active partnerships with other U.S. Companies in Delaware, as described in their U.S. SEC Form F-4 filing.[77]

Third, the ABCA contains a Delaware choice of law provision that provides further support for Goal's allegation. The ABCA's "Governing Law" provision provides:

> [t]his Agreement shall be governed by and construed in accordance with the internal Laws of the State of Delaware (without reference to its choice of Law rules), provided, that, for the avoidance of doubt, the Goal Merger shall be governed by the Laws of the State of Nevada and the State of Delaware[.][78]

On this point, a Delaware choice of law provision assumes some relevance in a dispute over personal jurisdiction because each state "has an interest in seeing to the effective administration of its law to matters that, by reason of its law, are governed by that law."[79] For example, Delaware has "a strong interest in the effective administration of the law governing corporations and [entities] organized under its laws."[80] In explaining that principle, the Court of Chancery aptly recognized:

> [t]here is, of course, a distinction between choice of law questions and questions of personal jurisdiction, and it is the case that a choice of law provision, without more, will not create a sufficient contact to support personal jurisdiction in the state whose law is chosen to govern the relationship. But employing the law of a jurisdiction to create legal entities, as is alleged here, is not a mere choice of governing law. The creation of a legal entity creates a forum state public interest in the governance of that entity.[81]

---

[77] D.I. 26 at ¶ 17 (emphasis added).
[78] ABCA at 81.
[79] *In re USACafes, L.P. Litig.*, 600 A.2d 43, 51 (Del. Ch. 1991).
[80] *Id.* (citing *Armstrong v. Pomerance*, 423 A.2d 174, 177 (Del. 1980); *McDermott Inc. v. Lewis*, 531 A.2d 206 (Del. 1987)).
[81] *Id.* (internal citations omitted).

When applying that reasoning to the present case, the ABCA's governing law provision provided that the Agreement was to be governed and construed in accordance with the laws of Delaware.[82] Furthermore, the merger itself and the resulting new entity, which was the ultimate objective of the ABCA as pled, was to be governed jointly by the laws of Delaware and Nevada.[83] As Goal alleges, had Digital Virgo not terminated the Agreement, and had the merger between the parties been consummated, there would have been a legal entity created that was subject to Delaware substantive law. Again, although this contractual provision may not have singularly conferred personal jurisdiction over Digital Virgo, it is nevertheless an additional factor that supports the sufficiency of Goal's pleading on the issue.

Fourth and finally, the underlying complaint itself, signed and filed by Mr. Sharma, alleged that Delaware held personal jurisdiction over Digital Virgo. As was the case regarding subject matter jurisdiction, Mr. Sharma signed and filed the underlying complaint that alleged that "[the Court of Chancery] has personal jurisdiction over [Digital Virgo] pursuant to 10 *Del. C.* § 3104(c)."[84] Such an allegation in the underlying complaint, subject to Rule 11's intrinsic certifications, may also not be singularly dispositive. Nevertheless, it is another circumstance that supports a reasonable inference that Delaware had personal jurisdiction over Digital Virgo in the underlying action.

For these reasons, Mr. Sharma's contention that, as a matter of law, Goal could not have succeeded in the underlying action on personal jurisdiction grounds is unpersuasive. Goal alleges a reasonably conceivable basis to infer that Delaware had personal jurisdiction over Digital Virgo in the underlying action.

---

[82] ABCA at 81.
[83] *Id.*
[84] Chancery Compl. at ¶ 6.

### 3. Goal sufficiently alleges resulting losses in the amended complaint.

Mr. Sharma attacks the sufficiency of Goal's factual allegations as to resulting loss on a third basis as well. He contends that Goal fails to allege that it would have met its ultimate objectives had the motion to expedite been granted.[85] To that end, he contends that the amended complaint seeks to recover for merely the loss of chance of later success. That, he asserts, is not compensable under Delaware law.

In response, Goal contends that it adequately alleged that Chancery would have granted the motion to expedite but for Mr. Sharma's negligence.[86] It also contends that the amended complaint sufficiently alleges that Goal would have obtained a preliminary injunction had Mr. Sharma not been negligent.[87] Finally, Goal contends that it would have ultimately consummated the merger had Chancery granted the preliminary injunction.[88]

The Court looks to both the amended complaint and the allegations in the Chancery complaint to resolve this dispute. When doing so, the Court recognizes some of the complicating factors that Mr. Sharma touches upon in his motion. Frankly, thorny questions will remain as to what may later be considered the ultimate measure of damages in this case. For instance, in one sense, a significant portion of the amended complaint centers on Mr. Sharma's failure to obtain an order to expedite the proceedings—an interlocutory matter. The success or failure to secure an expedition order could not alone qualify as winning or losing a case within a case. Moreover, the "ultimate" relief that Goal requested in the underlying action was a preliminary injunction—also typically a mechanism of interlocutory relief. Finally, Goal's ultimate objectives were (1) to win the ICC Arbitration, and (2) then

---

[85] D.I. 31, at ¶¶ 15, 16.
[86] Resp. to Am. Mot. to Dismiss at 14 (D.I. 39).
[87] *Id*. at 15.
[88] *See* Am. Compl. at ¶ 36 (contending that but for the denial of expedited review "Goal would have likely been able to preserve the "status quo" of the merger.").

successfully consummate the merger. Mr. Sharma did not represent Goal in the ICC Arbitration. Nor did he represent Goal or its affiliate in the merger. Here, Mr. Sharma's representation of Goal was limited to acting as local counsel in the underlying action. That will leave a difficult question for another day regarding how Goal will be able to quantify damages.

While acknowledging what may be future complications, the Court nevertheless maintains its focus on the adequacy of Goal's pleadings when resolving this motion. On one hand, Mr. Sharma correctly contends that the denial of a motion to expedite is a preliminary matter that could not, by itself, satisfy a "case within a case" analysis. That, as Mr. Sharma correctly asserts, would provide for a potential recovery for the mere loss of chance of winning a case in the future. To that end, the loss of chance of future success in the litigation (or for the chance to complete a future transaction) does not provide a basis for recovery.[89]

Nevertheless, the pinnacle relief requested in the underlying complaint was limited to a preliminary injunction—one that sought to secure the status quo pending the ICC Arbitration. Accordingly, a "final order" in the underlying case, and thus the final gauge of success of Mr. Sharma's representation in the "case within the case," will rest on the probable result of Goal's suit that sought only a preliminary injunction.[90]

---

[89] Goal identified no support in Delaware law or persuasive support from another jurisdiction to support sustaining a legal litigation malpractice action based upon the mere loss of chance of success in a case within a case. Nor does there appear to be any outside this jurisdiction. *See* MALLEN, 4 *Legal Malpractice* § 33:11 (2025 ed.) (explaining that when presented with a "loss of chance" contention in a legal malpractice action, "most courts . . . have rejected it as speculative, as inconsistent with the case-within-a-case methodology, and contrary to public policy").

[90] Nothing in this Rule 12(b)(6) decision should be read as resolving to what extent quantifying damages for the loss of a preliminary injunction may ultimately be proven to be speculative. Namely, Goal sought to advance the merger through a separate forum, the ICC Arbitration, which fell outside the scope of Mr. Sharma's representation. Without commenting further, at a minimum, the $10,000 retainer paid to Mr. Sharma for the representation qualifies as an adequately pled non-speculative alleged resultant loss to Goal.

With these recognitions in mind, Goal's amended complaint adequately pleads a resulting loss. The amended complaint first alleges that it would have successfully obtained an order to expedite had Mr. Sharma responded to the Court's offer of a date and time to present it. In fact, Goal pleads that Chancery would have "almost certainly . . . granted the Motion to Expedite" in the underlying action.[91] That allegation, when accepted as true, carries forward to the allegations that followed. Namely, Goal further alleges that it would then have won a preliminary injunction which would have frozen Digital Virgo's ability to breach the ABCA. More specifically, Goal alleges that Mr. Sharma's errors "hindered Goal from bringing *winning claims* before [Chancery] on an expedited basis which would have forced Digital Virgo to uphold the otherwise binding and enforceable deal it had struck with Goal."[92] Goal separately asserts in the amended complaint that "expedited relief would have been granted in the Chancery matter, and Goal *would likely have been able to* preserve the 'status quo' of the merger."[93] That allegation provides a clear reference to securing a preliminary injunction—again, the pinnacle relief sought in the underlying action. Taking these allegations as true, as the Court must, Goal adequately alleges it would have secured a preliminary injunction in the underlying action absent Mr. Sharma's negligence. What that will ultimately mean regarding damages, and how they can be fixed without speculation, will be left for another day.

---

[91] D.I. 26 at ¶ 21. Pertinently, the Court of Chancery "acts regularly to grant requests to expedite proceedings and the burden on a plaintiff seeking expedition is not a high one." *In re Ness Techs., Inc.*, 2011 WL 3444573, at *2 (Del. Ch. Aug. 3, 2011). As such, a plaintiff requesting expedition need only "articulate[] a sufficiently colorable claim and show[] a sufficient possibility of a threatened irreparable injury[.]" *Id.* (quoting *Police & Fire Ret. Sys. of the City of Detroit v. Bernal,* 2009 WL 1873144, at *1 (Del. Ch. June 26, 2009)).

[92] *Id*. at ¶ 27 (emphasis added).

[93] *Id*. at ¶ 36 (emphasis added). Of note, the ultimate burden of proof on this issue, and others, will be by the preponderance of the evidence.

Moreover, the underlying complaint—which both parties agree is integral—must also be considered when evaluating the sufficiency of Goal's pleading. There, Goal pled each element necessary to obtain a preliminary injunction.[94]

First, as to a reasonable probability of success on the merits, the underlying complaint alleged that objective facts would show that the ABCA was a valid and enforceable contract which Digital Virgo then breached by failing to complete its pre-closing obligations and by wrongfully invoking a termination provision.[95] Further, the underlying complaint alleged that Goal satisfied all pre-closing obligations and that Digital Virgo had no right to terminate the ABCA.[96]

Second, as to the irreparable injury element, Goal pled that it would suffer irreversible loss because it could not close the merger.[97] On that point, the Court of Chancery has recognized that the loss of a unique acquisition opportunity may constitute an irreparable harm worthy of preliminary injunctive relief.[98] In addition, irreparable harm has traditionally been found in circumstances where attempts to quantify damages would be imprecise and would not provide "full, fair, and complete relief for the alleged wrong."[99]

---

[94] To that end, a movant must demonstrate: "(1) a reasonable probability of success on the merits; (2) that they will suffer irreparable injury without an injunction; and (3) that their harm without an injunction outweighs the harm to the defendants that will result from the injunction." *C & J Energy Servs., Inc. v. City of Miami Gen. Employees'*, 107 A.3d 1049, 1066 (Del. 2014) (citing *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 179 (Del. 1986)).

[95] Chancery Compl. at ¶¶ 13–15, 26, 27, 31.

[96] *Id.* at ¶ 16.

[97] *Id.* at ¶¶ 24, 29.

[98] *ACE Ltd. v. Capital Re Corp.*, 747 A.2d 95, 110 (Del. Ch. 1999); *see e.g.*, *Hollinger Int'l, Inc. v. Black*, 844 A.2d 1022, 1090 (Del. Ch.), *judgment entered*, (Del. Ch. 2004), and *aff'd*, 872 A.2d 559 (Del. 2005) (recognizing that "[l]osses of strategic opportunities are often found to pose a threat of irreparable injury"); *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 184–85 (Del. 1986) (affirming the Court of Chancery's ruling that plaintiff's loss of the opportunity to bid on Revlon, *inter alia*, demonstrated irreparable harm).

[99] *In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 513 (Del. Ch. 2010) (quoting *N.K.S. Distribs., Inc. v. Tigani*, 2010 WL 2367669, at *5 (Del.Ch. June 7, 2010)). This, again, highlights the tension that arises between recognizing what is a legally recognized loss—a loss that by definition is not

Third, as to the balancing of hardships, Goal pled that the harm it would suffer, were the court to deny its preliminary injunction, would exceed any harm to Digital Virgo.[100] In support, Goal, as a SPAC, pled that it had a limited lifespan that hinged on closing the transaction.[101] It also pled that Digital Virgo was fully aware of that Achilles' heel and engaged in delay tactics to Goal's detriment.[102] As a result, Goal alleged a conceivable basis in the underlying complaint to successfully win a preliminary injunction.

On yet another basis, Goal sufficiently alleges a discrete cognizable loss in the amended complaint. Goal contends it paid $10,000 in attorneys' fees to Mr. Sharma so he would file the underlying complaint, secure an order of expedition, and serve the complaint. It further alleges that he unreasonably failed to complete the latter two tasks. If true, that would alone satisfy notice pleading requirements that Goal suffered harm because of Mr. Sharma's negligence because it paid attorneys' fees for the matters he unreasonably executed.

Finally, at a higher level, the Delaware Supreme Court's holding in *Country Life Homes, LLC v. Gellert Scali Buskenkell & Brown, LLC*,[103] is instructive and supports recognizing a reasonably conceivable basis to recover on these allegations. Namely, in *Country Life Homes*, the Court recognized a broad set of potential harms that would be sufficient to survive a motion to dismiss in a legal malpractice action. Specifically, the Court examined whether allegedly negligent pre-litigation advice that likely increased future litigation costs could suffice.[104] As the Court explained, a malpractice action should not be confined to either the "loss of judgment" setting

---

readily susceptible to being remedied by damages at law— and the later need to quantify that loss, without speculation.
[100] Chancery Compl. at ¶ 30.
[101] *Id*. at ¶ 17.
[102] *Id*. at ¶¶ 13, 30.
[103] 259 A.3d 55 (Del. 2021).
[104] *Id*. at 60.

in the litigation context or a failure to consummate a contractual relationship in the transactional setting.[105] There, mere pre-litigation advice that allegedly caused a plaintiff's later increases in litigation costs satisfied Rule 12(b)(6) pleading requirements. The Court's broader holding—that a plaintiff may permissibly allege that an attorney's negligence caused losses other than through the loss of a judgment or the failure to consummate a deal—provides further support for denying Mr. Sharma's motion.[106]

On balance, Goal's amended complaint sufficiently alleges resulting losses. Here, winning or losing the preliminary injunction in the underlying action could either (1) be considered a cognizable harm because it fits within a traditional case within a case measure, or alternatively (2) be considered harm under the broader breadth of cognizable harms recognized in the *Country Life* decision.

## V.    CONCLUSION

For the foregoing reasons, Mr. Sharma's motion to dismiss Goal's amended complaint is **DENIED**.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Resident Judge


*Via File & ServeXpress*

---

[105] *Id.*
[106] *Id.*